## APPEAL OF GEORGE N. REICHARD, ET AL.
## APPEAL OF JOHN M. CRANE, GUARDIAN.
## APPEAL OF MARY HOLMES, ET AL.

### APPEALS FROM THE ORPHANS' COURT OF LUZERNE COUNTY.

Argued April 13, 1887—Decided May 2, 1887.

1. A codicil should not be held to interfere with any of the specific provisions of a will, unless its language naturally and obviously produce such result, or the terms of the codicil expressly recognize the alteration; or to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil.

A testator by his will devised and bequeathed one sixth part of his resid-

uary estate to trustees in trust to pay the income to his daughter for life and on her death to pay said income to the child or children of his said daughter, who should be living at the time of her death, and the issue of any deceased child or children, until they reached respectively their majority, when their respective shares were to be paid over to them. By a codicil the testator provided: "Item (D), paragraph eight, wherein by my will I have directed my executors to collect and receive the annual income and profit arising out of the one sixth part of my estate, and to pay over the same . . . . . to my daughter Helena, for and during the period of her natural life, is hereby revoked. And instead thereof my said executors . . . . . are hereby directed to pay to my said daughter . . . . . as soon after my death as they conveniently can the sum of $2,000 ; " *Held*,

2. That this codicil revoked simply the provision of the will made for the daughter, without disturbing those made for her children or their issue ; that the testator had died intestate as to the income of the one sixth of his residuary estate during the life of his daughter, which income for that period was payable to his heirs, and that the interest of the daughter's children was not vested at the testator's death, but contingent on their surviving their mother.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

Nos. 361, 363, 420 January Term 1887, Sup. Ct.

In the auditing and distribution of a balance of $55,578.13 shown by the first and partial account of the last will and testament of John Reichard, deceased, it appeared that the testator died on August 19, 1884, leaving to survive him no widow, but

Children, as follows, to wit: George N. Reichard, Henry C. Reichard, Catharine, intermarried with Charles Leonard, John Reichard, Jr., Magdalena (called in the said will "Helena"), now intermarried with J. H. Swoyer (formerly with M. A. Holmes), and Charles W. Reichard.

Also grandchildren, as follows, to wit: Children of a deceased daughter, Albertina, who died before decedent, to wit: Harry E., William, Jessie, Anna and Marie Swoyer, all minors, having for their guardian John M. Crane, Esq. Also James Hancock, son of a deceased daughter, Julia, a minor, having as his guardian *ad litem* John M. Crane, Esq. Also two living children of the above named Helena, to wit : Mary Holmes, of age, and Albert Edward Swoyer, a minor, having as his guardian The Miners' Savings Bank of Wilkes-Barre, Pa.

A contest arose upon the construction and effect of codicil No. 2 to the will of said decedent. The said will, dated April 1, 1880, and with its codicils admitted to probate October 14, 1884, after the appointment of John Reichard, Jr., Andrew H. McClintock and Harrison Wright, its executors, provided for certain pecuniary legacies, and proceeded:—

*Eighth.* Subject to the provisions aforesaid, I give, devise and bequeath all my estate, real, personal and mixed, in manner as follows:

(A) To my son George N. Reichard one equal sixth part thereof.

(B) To my son John Reichard, Jr., one equal sixth part thereof.

\*      \*      \*      \*      \*      \*      \* ·

(D) To John Reichard, Jr., Andrew H. McClintock and Harrison Wright and their heirs one other equal sixth part thereof. In trust nevertheless to collect and receive the annual income or profit arising therefrom and to pay over the same less all proper costs, charges and disbursements to my daughter Helena, wife of M. A. Holmes, for and during the period of her natural life, her own receipt whether married or sole to be a good and sufficient voucher therefor. And from and after the death of my said daughter in trust to pay the said net annual income or profits to the child or children of my said daughter who shall be living at the time of her death and the issue of any deceased child or children in equal parts (such issue taking always by representation), until they shall severally and respectively attain the age of twenty-one years. And upon the further trust to pay over, convey and deliver to such child or children and such issue of any deceased child or children when and as they respectively attain the age of twenty-one years his or her proper and respective share of the principal or corpus of said trust fund or estate.—

Part (C) of this *eighth* item was a provision for Catharine Leonard and her children the same as part (D) above. Parts (E) and (F) bequeathed each " one other equal sixth part " to the same persons in trust for Charles and Henry respectively, the income and principal payable as directed. The *twelfth* item related to a lease made of a brewery property to George N. and Henry and its continuance. The other parts of said will are not material to the questions raised.

Opinion of the Court below.

A codicil, No. 2, dated September 21, 1883, was as follows:

Item, I do hereby revoke the appointment of Andrew H. McClintock and Harrison Wright to be executors and trustees under my last will and testament, and in their stead now nominate, constitute and appoint George N. Reichard and E. S. Osborne as my executors and trustees, to do all those things needful and necessary to carry out my said will and testament; my said will being hereby so amended as to substitute therein the names of the said George N. Reichard and E. S. Osborne, in place and instead of the names of the said Andrew H. McClintock and the said Harrison Wright as executors and trustees.

Item, Item (D), paragraph eight, wherein by my will I have directed my executors to collect and receive the annual income and profit arising out of the one sixth part of my estate, and to pay over the same less costs and charges to my daughter Helena, for and during the period of her natural life, is hereby revoked. And instead thereof my said executors, John Reichard, Jr., George N. Reichard and E. S. Osborne, are hereby directed to pay to my said daughter Helena, now intermarried with J. H. Swoyer, as soon after my death as they conveniently can the sum of two thousand dollars.

Item, The twelfth and last paragraph in my said will is hereby revoked.

In witness whereof, . . . . .

Upon this contention, RHONE, P. J., auditing judge, held:

The trusts created in said item D are two very distinct ones: 1st. For the use of Helena for life. 2d. For the use of her children during minority, with a fee to them afterwards.

The codicil reads. . . . .

The other five children of the testator claim that this codicil revokes all the trusts created by the said item D of the will, while, for the children of Helena, it is contended that no more of the will is revoked by the codicil than that which relates to the bequest to her.

In Williams on Ex., p. 8. n. (q.), ed. 1877, the rule of law is stated to be that " a codicil does not interfere with any of the specific provisions of the will, unless its language naturally and obviously produce such result, or the terms of the

codicil expressly recognize the alteration.    See also p. 185, n.
(1).    In Jarman, p. 176, n. (62), the rule is stated to be that
a codicil does not disturb the dispositions of the will further
than is absolutely necessary for the purpose of giving effect to
the codicil.    This rule is recognized in Lewis's Appeal, 42
Leg. Int. 336, and Spang v. Hill, 2 Woodw. 45.    The burden
then lies upon the five children, for the will clearly gives to
Helena and her children the whole of one sixth of the estate.

Those claiming adversely to the grandchildren contend that
codicil No. 2 properly reads "Item D, paragraph eight. . . . .
is hereby revoked, and instead thereof" etc.; and that the
words intervening are clearly descriptive of the whole para-
graph ; while on the other hand, for the grandchildren, it is
claimed that the said intervening words are only descriptive
of their mother's bequest.    By his codicil the testator clearly
intended to drop from item D, paragraph eight, the provision
therein made for his daughter Helena, and to substitute therefor
the sum of $2,000, but we cannot conclude that anything more
was intended.

In the same codicil he revokes the whole of paragraph
twelve of the will in most clear and technical language, and
his intention to revoke the appointment of two of the trustees
named in the will, and to substitute two others, is stated with
great clearness.

The bulk of his estate was, by the will, divided into six
equal parts, and so demised to his six children then living,
giving to two sons a clear estate, and to the rest a use for life,
with remainder to their children.    To give to Helena and her
children $2,000 as a substitute for one sixth of the whole estate,
and to increase the shares of the rest to fifths cannot be allowed
on so strict a construction as is contended for.    After so care-
fully disposing of his whole estate, we are loth to conclude
that he intended to die intestate as to one sixth of his estate,
and leave unsettled the question as to whom the same should
be distributed, and under the rule of law we feel bound to
conclude that the codicil can be made to have full effect upon
Helena's portion alone.    It seems very fair to apply the lan-
guage of the codicil to Helena's life estate, and to no other
part of the item D.    The language used covers her bequest
exactly, and does not fairly and reasonably embrace the whole
of said item.

The next question is, from what fund shall the bequest of $2,000 given by codicil to Helena be paid? The testator says, my said executors " are hereby directed to pay (the same) as soon after my death as they conveniently can." So it seems that this is a general legacy, and to be paid out of the general fund.

Assuming so much as we have said to be correct, then the inquiry follows, what: shall be done with the income on the one sixth of the estate bequeathed to Helena for life? Has the decedent as to this died intestate, or does it drop into the lap of the children of Helena, or does it fall to the residuary legatees? We cannot say that the testator intended either of these distributions, for it seems most likely the question never presented itself to his mind, hence its distribution must be made as the rules of law direct.

Our first impression was that the said income would go to those who are to take the remainder after Helena's death, to wit, her children; but it now seems quite clear this never could have been contemplated, as the result would be to give them the benefit of the bequest to their mother of $2,000, to the injury of the other five residuary legatees. The state of facts here presented does not bring this case under the rule that where the enjoyment of an estate is postponed for the use of one for life it vests in fee immediately in case the life tenant's interest be released or extinguished: Coover's Appeal, 74 Penn. St. 143, for in such case no one but the remaindermen are interested. In such cases no one is injured: Gast v. Porter, 13 Penn. St. 533. Here the bequest is not to the children of Helena, subject to the life estate of their mother, but is to trustees for distinct uses at specified times and under certain contingencies. The persons who are to be the ultimate beneficiaries are not to be determined now, but at Helena's death—they are to be those of her children " who shall be living at the time of her death, and the issue of any deceased child or children, in equal parts," etc. The estate bequeathed, under the terms of the will, is personalty. The real estate is to be converted into money by the executors, and this converts it into personalty: McClure's Appeal, 72 Penn. St. 414, and cases there cited. Until it is ascertained by the death of Mrs. Swoyer who are the survivors, it cannot be known to

whom the estate will belong, and of course it is not vested, but is contingent: Pleasanton's Appeal, 99 Penn. St. 362; Seibert's Appeal, 13 Idem 501; Dunwoodie v. Reed, 3 S. & R. 435.

Where the contingency is attached to the legacy itself, and not merely its payment, the legacy itself is contingent; and the want of a bequest over makes no difference. It becomes merged in the residue, if it never vests: Gilliland v. Breden, 63 Penn. St. 397.

If this bequest had been to Helena for life, and at or after her death to her children, naming them, then the estate might be considered as vested in them; but here the estate is vested in trustees until it is determined who of Helena's children are living at her death: See Chew's Appeal, 37 Penn. St. 23; King v. King, 1 W. & S. 205.

Having established to our own satisfaction that the income which was at first bequeathed to Helena for life does not belong to her children, the only remaining question is, shall the income be distributed to the decedent's heirs in general, or to those who are to take the residue, of whom Helena is one?

The codicil is to be read as though it were a part of the original will, which would put Helena out of the residuary clause altogether and place her with the prior general legatees. So if we give the disputed income to the residuary class only, she will not be entitled to any share of it; but if we conclude the said income is to be distributed to the decedent's heirs in general, then she will take one eighth thereof, the grandson, James Hancock, taking one share, and the children of Albertina, another deceased daughter, taking another, with those named in the residuary clause.

Residuary legatees take lapsed and void legacies, to the exclusion of the testator's heirs in general, if the terms of the will are comprehensive enough to embrace them: Massey's Appeal, 88 Penn. St. 470; Woolmer's Estate, 3 Whar. 478; but this is not the case of a lapsed or a void legacy, but only and simply an intestacy. KENNEDY, J., in Woolmer's Estate, supra, recognizes the rule to be "that if the gift of some portion of the residue itself fails, where it is given in several distinct shares, the share so failing will not accrue to the remaining shares, but belongs to the next of kin as undisposed

of ": citing Bagwell v. Dry, 1 P. Williams, 700. To the same effect is Duffield v. Morris, 8 W. & S. 348, and see Williams on Exrs. ed. 1877, *p. 1460 or p. 1570, n. a, b, c. We therefore direct that the one sixth part of the estate, bequeathed in "item D, paragraph eight," be distributed to the trustees named in trust, to pay the income thereof during the life of Mrs. Swoyer to the heirs of the decedent in general, and after her death for the use and benefit of her children, as provided in said item, and that the legacy of $2,000 be paid to her now out of the funds of the estate before it is divided into sixth parts.—

A statement of distribution being made, it was decreed that the accountants pay out the funds in accordance therewith, whereupon George A. Reichard and John Reichard, Jr., took an appeal (No. 361), assigning for error that:

1. The court erred in dismissing appellants' fourth exception to the report of the auditor, which reads as follows:

IV. The learned judge erred in finding that the codicil No. 2 to said will did not revoke the remainder in the one sixth part of the said estate given to the children of Mrs. Helena Swoyer in "item D, paragraph eight," of the will of said decedent, and in not finding that said codicil revoked the whole of said "item D, paragraph eight," and all the estates and interests devised or bequeathed in said item, as well to the children of Mrs. Swoyer as to herself.

2. The court erred in dismissing appellants' fifth exception to the report of the auditor, which reads as follows:

V. The learned judge erred in not finding that codicil No. 2 revoked the whole of "item D, paragraph eight," of the will, and that the one sixth part of said estate referred to and mentioned in the said item should be distributed to the other residuary legatees, named in said paragraph "eight," in equal shares and in the same manner as the other shares are given to them in said paragraph.

John M. Crane, Esq., guardian, also took an appeal (No. 363), assigning for error that:

1. The court erred in dismissing appellants' first exception to the report of the auditor, which reads as follows, to wit: the learned judge (as auditor) erred in finding that codicil No. 2 did not disturb the remainder given to her (Mrs. Swoyer's) children in the one sixth part of decedent's estate:

2. The court erred in dismissing appellants' second exception to the report of audit, which reads as follows, to wit: The learned judge (as auditor) erred in not finding that codicil No. 2 revoked the whole of item D, paragraph eight, of testator's will, and that testator died intestate as to the one sixth of his estate devised by said item.

Mary Holmes and The Miners' Savings Bank of Wilkes-Barre, guardian, also took an appeal (No. 420), assigning for error that:

1. The learned judge erred in not finding that the children of Helena are entitled to the income of the one sixth devised in D, paragraph eight, of the will.

2. The learned judge erred in finding that the interests of the said children of Helena are contingent and not vested until the death of their mother.

3. The learned judge erred in finding that the interests of the children of Mrs. Leonard and Henry Reichard are vested and not contingent.

*Mr. R. D. Evans* (with him *Mr. E. S. Osborne*), for George N. and John Reichard, Jr., appellants (No. 361):

In an examination of the cases cited in 1 Jarman, ed. 1880, 343, 346, in illustration of the rule that, " a codicil does not disturb the dispositions of a will further than is absolutely necessary for the purpose of giving effect to the codicil," it will be found the rule is applied in full force only where the revocation contended for is produced by an inconsistency between the dispositions of the will and those of the codicil; and that it is followed with much more caution where the codicil, as in the present case, contains express words of revocation.

In the case before us we submit that the plain, literal and grammatical sense of the words employed is that "item (D), paragraph eight," is revoked, the other words descriptive of the gift contained in that item being thrown in parenthetically for the purpose of further identification of the item : Shirey v. Postlethwaite, 72 Penn. St. 41. The codicil can be given the construction adopted by the court below only by supplying some such words as " that part of," or, " so much of," before "item D, paragraph eight," or by transposing the word " wherein " from its position after these words to a place

before them, and at the same time dividing it into two words and thereby altering its meaning; but words may be supplied, altered or transposed, only where there is a manifest absurdity, contradiction or lack of sense as the words stand, and where there is an equally manifest certainty as to what words the testator intended to use: 2 Jarman, ed. 1880, 60, n. 1, 75, n. 5; 1 Redf. W., ed. 1866, 467 *; O'Hara, ed. 1872, 37 *et seq.*: McKeehan v. Wilson, 53 Penn. St. 74; Varner's App., 87 Idem 422; Graham v. Graham, 4 Am. Prob. R. 181.

It was the manifest intention of the codicil to leave the estate in fifths.

*Mr. J. V. Darling* and *Mr. F. W. Wheaton* (*Mr. E. P. Darling* with them), for the appellees (No. 361):

It is insisted by the appellants that the rule laid down in 1 Jarman 176, is not supported by the authorities, except as to codicils in which the intention to revoke is found only in some inconsistency between their provisions and those of the original will. It is certain that the distinction sought to be drawn is not made by Mr. Jarman, and that many of the cases cited by him are cases of express revocation, as for example: Doe v. Hicks, 1 Cl. & F. 20; Alexander v. Alexander, 6 D. M. & G. 593; Agnew v. Pope, 1 De G. & J. 49; Alt v. Gregory, 8 D. M. & G. 221; Nevill v. Boddman, 28 Beav. 554. Transposition will be made if it be required to effectuate an intention clearly expressed or indicated by the context: Jarman, 502; Eden v. Wilson, 4 H. L. 257.

If the gift of the one sixth to Helena's children is revoked, that share cannot go to the other residuary legatees. The act of June 4, 1879, P. L. 88, does not apply to lapsed residuary devises: Everman v. Everman, 15 W. N. 417; Neff's App., 52 Penn. St. 326; Reed's Est. 82 Idem 428; Duffield v. Morris, 8 W. & S. 348; Woolmer's Est., 3 Wh. 478.

*Mr. George K. Powell* for John M. Crane, Esq., guardian, appellant (No. 363):

The intent of the codicil was to revoke nothing less than the whole of "item (D)." The language is direct and positive. Had the testator and scrivener intended the result arrived at by the court below, they would have naturally and certainly

said, " that part of item (D), paragraph eight, wherein by my will I have directed my executors . . . . . ," or, " so much of item (D), paragraph eight, as directs my executors . . . . . is. hereby revoked."

This is not a case requiring the citation of authorities. The general rule undoubtedly is that " a codicil is no revocation of a will, except in the precise degree in which it is inconsistent with it, unless there be words of revocation : 8 Cow. 56 ; Brant. v. Wilson, cited by WOODWARD, P. J., in Spang v. Hill, 2. Woodw. 45.

*Mr. J. V. Darling* and *Mr. F. W. Wheaton* (*Mr. E. P. Dar-- ling* with them), for the appellees (No. 363) :

It is submitted that the only fair and direct meaning of the whole language used is, that the life estate only is revoked :. Wms. on Ex. 8, n. (q), ed. 1877 ; Jarman Wills, 176 ; Wescott. v. Cady, 5 Johns. Ch. 334, 343. There is every presumption: against intestacy : Roland v. Miller, 100 Penn. St. 50.

*Mr. J. V. Darling* and *Mr. F. W. Wheaton* (with them *Mr. E. P. Darling*), for appellants (No. 420) :

The executors take a fee : Neilson v. Lagow, 12 How. 98.

The estate of the children of Helena is not a remainder at all, but merely an equitable right upon the happening of a particular event, to wit: on their arrival at majority, Helena being dead, to have the lands partitioned and conveyed to them in fee-simple : Holt v. Lamb, 17 Ohio 374 ; Phipps v. Ackers, 9. Cl. & F. 583 ; Fox v. Fox, L. R. 19 Eq. 286 ; Doe v. Considine, 6 Wall. 458; Hawkins on Wills, 237–241. The estate being vested in the children of Helena, living at death of testator, although the principle is not divisible, the present income is payable to them : Phipps v. Ackers, *supra ;* Whittier v. Brembridge, L. R. 2 Eq. 736 ; Montgomerie v. Woodley, 5 Ves. 522; Blease v. Burgh, 2 Beav. 221 ; Josselynn v. Josselynn, 9 Sim. 63. There is no direction to sell the real estate, but simply a discretionary power, which does not work a conversion.

An estate will not be construed as contingent if it is at all practicable to construe it as vested : Manderson v. Lukens, 23 Penn. St. 31 ; Burd v. Burd, 40 Idem 182 ; where the time

is annexed to the payment and not to the gift, the interest is always vested; Bayard v. Atkins, 10 Penn. St. 15; Boraston's Case, 3 Coke 19; 2 Jarman W. 418; Crawford v. Ford, 7 W. N. 532; Doe v. Ewart, 7 A. & E. 636; Gilson v. Walker, 20 N. Y. 476; Livingston v. Green, 52 N. Y. 118; Johnson v. Valentine, 4 Sandf. 36.

The evident design of the testator, as apparent from the whole will, is to divide his estate into six parts, and to give to each living child and the issue of such child one of the equal six parts, absolutely, completely and entirely. This is apparent (1), because there is no residuary clause in the will, and (2), because in each case the designation of those who shall succeed to the estate upon the death of their parent, is identical as to the person so succeeding and as to the quantity of estate succeeded to, as by the intestate law is provided. Such a designation creates no contingency of estate : Womrath v. McCormick, 51 Penn. St. 508; Manderson v. Lukens, *supra ;* Crawford v. Ford, *supra ;* Laguerenne's Estate, 12 W. N. 110; Blanchard v. Blanchard, 1 Allen 277; Doe v. Considine, 6 Wall. 476; McArthur v. Scott, 113 U. S. 380; Crossly v. Cooper, 19 Wall. 167; Dingley v. Dingley, 5 Mass. 535; Smither v. Willock, 9 Ves. 233; Darling v. Blanchard, 109 Mass. 176. That construction should be adopted which will prevent possible future intestacy : 2 Jarman on Wills, 469.

*Mr. George K. Powell,* for the appellee (No. 420) :

It is not disputed that something was revoked by the codicil. If it were the entire "item D," the appellants certainly have no standing ; if only the mother's life estate, then there is no direction to the trustees as to how they shall distribute the income of the one sixth so long as Helena lives. In other words, as to such income decedent died intestate.

Surely the court below was right in saying, "until it is ascertained by the death of Mrs Swoyer who are the survivors, it cannot be known to whom the estate will belong, and of course it is not vested but contingent ": Pleasanton's App., 99 Penn. St. 362, and the other cases cited; also Gilliland v. Bredin, 63 Penn. St. 397 ; Languerenne's Est., 12 W. N. 110.

OPINION, MR. JUSTICE STERRETT :

Subject to the provisions of the first seven paragraphs of his

will, the testator in item D. of the eighth paragraph, gave to three persons, and their heirs, the one sixth part of his estate, real, personal and mixed, " in trust nevertheless to receive the annual income or profit arising therefrom and to pay over the same less all proper costs, charges and disbursements to my daughter Helena, wife of M. A. Holmes, for and during her natural life, her own receipt, whether married or sole, to be a good and sufficient voucher therefor. And from and after the death of my said daughter in trust to pay the said net annual income or profits to the child or children of my said daughter who shall be living at the time of her death, and the issue of any deceased child or children in equal parts (such issue taking always by representation) until they shall severally and respectively attain the age of twenty-one years. And upon the further trust to pay over, convey and deliver to such child or children and such issue of any deceased child or children when and as they respectively attain the age of twenty-one years, his or her proper and respective share of the principal or corpus of said trust fund or estate."

The second codicil contains this clause, viz. : "Item D., paragraph eight, wherein by my will I have directed my executors to collect and receive the annual income and profit arising out of the one sixth part of my estate and to pay over the same less costs and charges to my daughter Helena for and during her natural life is hereby revoked. And instead thereof my said executors . . . . . are hereby directed to pay to my said daughter Helena, now intermarried with J. H. Swoyer, as soon after my death as they conveniently can, the sum of two thousand dollars."

The single question presented by the record is, whether the testator by this clause of the codicil intended to revoke the whole of item D. of his will above quoted, or only so much thereof as relates to the payment of the annual income and profit of the one sixth to his daughter Helena.

A strictly grammatical construction of the language employed favors the conclusion that testator intended to revoke the whole of item D.; but, in view of all the provisions of the will and codicils thereto, so far as they tend to shed light on the subject, we concur in the conclusion reached by the learned judge of the Orphans' Court, that he intended to revoke

only so much of item D. as relates to the provision made for his daughter Helena, without disturbing the provision in favor of such of her children as may be living at the time of her death, and the issue of any deceased child; as though he had said: Item D., paragraph eight, in so far only as I have directed my executors . . . . . to pay over . . . . . to my daughter Helena for and during her natural life, is hereby revoked. In the codicil he repeats, in almost the identical language of the will, the clause creating the trust in favor of his daughter for life, and we have no doubt that was all he intended to revoke. Having revoked that clause, he substituted in lieu thereof the legacy of $2,000.00. If he had intended to revoke the whole of item D. it would have been unnecessary to repeat the clause referred to, for the purpose merely of designating the item itself. That could have been more conveniently and certainly done by describing it as "Item D.;" because it is the only item in the will designated by that letter. In the next line of the codicil he revokes the last paragraph of his will by describing it simply as the "twelfth and last."

Having rightly concluded that the life estate given to testator's daughter Helena was revoked by the codicil without disturbing the remainder given to her children living at the time of her death, etc., it necessarily follows that, as to the income and profit of the one sixth in question, during Mrs. Swoyer's lifetime, her father died intestate and hence it was proper to award that portion to the trustees, in trust to pay the income thereof, during her lifetime, to the heirs of testator, and, upon her death, in trust for her children, etc., as provided in the unrevoked portion of item D., paragraph eight, of the will. The assignments of error are not sustained.

> Decree affirmed and appeal dismissed at the costs of appellants.

## APPEAL OF CRANE, GUARDIAN.

The questions presented by this record are substantially the same as those that have been considered and disposed of in Reichard's Appeal, No. 361, of this term. For reasons given in opinion filed in that case, we are satisfied there is no error in the decree.

> Decree affirmed and appeal dismissed at the costs of the appellant.

APPEAL OF HOLMES ET AL.

It has been decided in Reichard's Appeal, No. 361, of this term, that so much of item D., paragraph eight, of the will under consideration, as relates to the provision therein made for testator's daughter Helena, was revoked by the second codicil without in any manner interfering with the residue of that item creating a trust in favor of such of her children as may be living at the time of her decease and the issue of any deceased child or children, etc.

According to express terms of the will, the net annual income of the trust is payable to the children only from and after the decease of their mother. Indeed, it is not payable sooner for the further reason that the beneficiaries of the trust cannot be ascertained until that event occurs. The children now living may not survive their mother, and in that contingency they will never become beneficiaries. Their interest is therefore contingent and not vested, and the learned judge of the Orphans' Court was right in so holding. As to the income from the one sixth, accruing during the lifetime of Mrs. Swoyer, her father died intestate, and hence it is distributable among his heirs under the intestate law. The assignments of error are not sustained.

> Decree affirmed, and appeal dismissed at costs of appellants.