W. T. McGEHEE ET AL. *v.* JOHN S. McGEHEE.

1. WILL.  *Construction.*

The true rule for the construction of a will is to ascertain the intention of the testator from the will itself—the whole will taken together, including codicils, if there be any.

2. SAME.  *Revocation.  Codicil.*

Where a devise or bequest in a will is clear and free from doubt, the intention to revoke by a codicil must be equally clear and explicit in order to work a revocation.

FROM the chancery court, first district, of Panola county.

HON. B. T. KIMBROUGH, Chancellor.

Mrs. Anna Dandridge died in 1888, leaving a will of date January, 1870. By the third item thereof it was provided: "I will and bequeath to my niece, Emma L. McGehee (daughter of the late Edward McGehee and my sister, Sarah E. McGehee), Hollywood house, with the household and kitchen furniture, and the section of land upon which the house stands (section 32); and I do this not only from my attachment to her, but because the place is dear to her, having been the home of McGehee Dandridge, hoping she may reside here and have a care over the plots at Fredonia cemetery, in which we are mutually interested."

After the date of the will Emma L. McGehee married one Yarbrough, and then testatrix executed a second codicil to said will (the first codicil being of no significance in this case), which, so far as concerns the question before the court, was in these words, viz.: "To Emma McGehee Yarbrough I give and bequeath Hollywood house, with household and kitchen furniture and the section of land (thirty-two) on which domicile stands, as mentioned in item three of my will, for her separate use and benefit. Should she die childless, to revert to the legatees of my estate."

Emma McGehee Yarbrough having died, the testatrix, on the twenty-seventh day of May, 1877, made a third codicil in these words, viz.: "I do here will and bequeath Hollywood house, household and kitchen furniture, with the section of land (32) on which it stands, to my sister, Mrs. Sarah E. McGehee. I also revoke the bequest for monument over my grave, preferring that anything saved from the wreck of my estate be given to my heirs."

By a fourth codicil, executed May 26, 1880, the testatrix provided: "In the event of my sister's (Sarah E. McGehee) death, Hollywood house, section of land (32), etc., to descend to her second son, John Scott McGehee."

A fifth codicil to said will was executed by the testatrix, and it was as follows: "I hereby revoke all codicils and bequests, save my dwelling house and furniture belonging to the same, even the life insurance policy must go to a debt created last summer to W. T. McGehee, of Bolivar."

The will and codicils having been duly probated, the suit was brought by Sarah E. McGehee, who died pending the suit, and John Scott McGehee against the heirs of the testatrix and other legatees and devisees, in order to have the will construed and their title to Hollywood house and the section of land upon which it stands, section 32, adjudged and quieted.

The court below decreed in complainant's favor, and the defendants appealed.

*R. H. Taylor* and *J. B. Boothe*, for appellants.

Our contention is that the fifth codicil, the last one, revoked the third and fourth codicils. It says: "I hereby revoke all codicils and bequests, save my dwelling house and furniture belonging to the same," etc. Did the testatrix mean by "my dwelling house," the whole of section thirty-two? Surely not, because we find her making several testamentary dispositions of the entire section, and in each instance she used appropriate language to effect her purpose. In the will itself, item third, it is devised as "Hollywood house, with the household and kitchen furniture, and the section of land upon which the house stands, section thirty-two." And the second codicil devises the section of land as "Hollywood house, with household and kitchen furniture, and the section of land (32) on which domicile stands." By the third codicil the land is devised as "Hollywood house, household and kitchen furniture, with the section of land (32) on which it stands." By the fourth codicil the description is "Hollywood house, section of land (thirty-two)," etc. Each of these instances shows, and they conjointly convince, that the testatrix distinguished between Hollywood house and the section of land. If she did not, by the last codicil, intend to revoke the bequest of section thirty-two, it is clear that she would not have used the language therein employed. Certainly the devise is so uncertain, putting it strongest against appellants, that the court below should not have adjudged title to section thirty-two in complainant.

*F. B. Poston*, for the appellees.

The language, "I hereby revoke all codicils and bequests save," etc., is a complete revocation of all the bequests and all codicils of the will, to every person named and of every character, except one class—that is, "save" or excepting the codicils or bequests of the "dwelling house and furniture belonging to the same," which codicils three and four, devising the dwelling house known as "Hollywood," furniture, section of

land, etc., and the bequests of that property are in nowise re-
voked and annulled.    In other words, as I construe this lan-
guage in connection with the manifest intention and purpose of
the testatrix as shown in other parts of this will, it is as if the
codicil read: "I hereby revoke all codicils and all bequests
save those codicils relating to and the bequests of my dwelling
house," etc., and therefore, the excepted codicils and bequests
which dispose of this property are in nowise affected or an-
nulled.

The word "save," as used in this codicil, ordinarily and
technically means "to reserve, exempt out of, to preserve, to
suspend the operation of." Anderson's Law Dictionary. So
that if the codicil relating to and the bequests of this prop-
erty are "reserved," "preserved," "exempted out of," or
"suspended from the operation of" the codicil in question,
it is clear that codicils three and four must stand intact, as they
are not revoked by it.    And, so far as this property is con-
cerned, it is the same as if the last codicil had not been written.

It cannot be doubted that the testatrix intended to "reserve"
or "exempt" or "save" something from the sweeping revo-
cation of the last codicil.    This revokes and annuls all the "codi-
cils" and all the "bequests" contained in the previous parts of
the will, including its codicils, "save" or excepting from its
operation one class of codicils and the one class of bequests re-
lating to Hollywood house (called "my dwelling house"), the
furniture and the land.    Any other construction would revoke
the entire will, and leave Mrs. Dandridge dying intestate as to
all of her property, both real and personal.    It is a settled rule
that a testator is presumed not to die intestate as to any of his
property, and the will is not to be construed to effect this end,
unless it clearly appears that the testator so intended.

As I understand the contention of the defendants in this case,
it is their insistence that the last codicil to the will should be so
construed as to confine the saving or reserving clause of it to
simply the dwelling house upon the section of land 32, and the

furniture therein, so as not to include the land itself.    In other words, that Mrs. McGehee, under the third codicil of the will, and her son, John S. McGehee, under the fourth codicil, only took title to the dwelling house proper and the furniture, and to no part of the land.    Now, it is manifest that it was never the intention or purpose of the testatrix to separate the house from the land, which would be necessary if this construction is to obtain.    It will be noticed that the will is inartificially drawn, and this fact can be explained by the statement annexed to the original will, that it was acknowledged in the presence of the witnesses, by Mrs. Dandridge, to have been wholly written and signed by her.

STOCKDALE, J., delivered the opinion of the court.

We are asked to reverse the judgment of the court below, whereby it was decreed that the title to certain property, therein described as Hollywood house and furniture, and the land on which it stands (section 32), vested in John Scott McGehee, in fee simple, upon the death of Sarah E. McGehee.    The contention of appellants is that the last codicil revokes the devise of section 32.    Counsel on both sides lay down the correct rule of construction of wills—that is, to ascertain the intention of the testator from the will itself, the whole will taken together, including codicils, if there be any.    Consulting this will with its codicils, it appears that the testatrix, by item three, wills Hollywood house and furniture, and section 32, on which it stands, to a favorite relative, Emma L. McGehee, and gives a reason for it, saying that she did that "not only from her attachment to Emma McGehee, but because the place is dear to her, having been the home of M. G. Dandridge, hoping she may reside there and have a care over the plots at Fredonia cemetery, in which they were mutually interested."    After Emma McGehee married Mr. Yarbrough, by codicil two, October 1, 1875, testatrix willed this same property to her again, by her married name, Emma McGehee Yarbrough.    After her

death, testatrix willed this same property to her sister, Mrs. Sarah E. McGehee, by codicil three, May 27, 1877. And by codicil four, May 26, 1880, she limited Sarah E. McGehee to a life estate, and willed it in fee to her son, John Scott McGehee, as remainderman. As throwing some light on the intention of the testatrix, we note that, after the death of Emma Yarbrough, she did not let this devise stand to descend to the Yarbrough heirs,. to whom the place might not be so dear, and who might not have a care over the cemetery, but changed the devise, by codicil three, so that this cherished home should go to her sister, Mrs. Sarah E. McGehee, seeming to desire this home to remain in the family, and later seemed to further that object by codicil four, by limiting Sarah E. McGehee to a life estate and remainder to John Scott McGehee, second son of Sarah E. McGehee.

There seems to be no room to doubt that during the ten years from January, 1870, date of the will, to May, 1880, date of codicil No. 4, this home was regarded and thought of by testatrix as one property—Hollywood house and section 32, on which it stands, and the furniture to go with it. In the same codicil, by which she revoked the provision for a monument over her grave, preferring, as she then said, that whatever could be saved out of the wreck of her estate should go to her heirs, she willed Hollywood house, furniture and section 32, on which it stands, to her sister. She preferred that her grave remain without a monument, that her heirs might have a little more; but the same mind and the same hand then and there refused to dismember the old homestead, where M. G. Dandridge had lived, where the family cemetery is, but directed it to go— Hollywood house, furniture and land (section 32), on which the house stands—to her sister, and later to her nephew, John Scott McGehee. The last codicil seems to have been made only because of a certain debt that must be paid. She therefore revoked a number of bequests to servants and kinspeople, amounting to a large sum, including a life policy for $1,000 willed to

a kinswoman.   The testatrix, evidently a lady of a high sense of honor and of the sacredness of obligations, revoked her bequests that the debt might be paid instead of them; evidently with intent to save the home intact.   Else she would have allowed the debt to be a charge on her general estate, and all the legatees and devisees share alike in its payment.   She seemed to regret the necessity when she put in that revoking codicil the pathetic expression, "even the life insurance policy must go to a debt created last summer to W. T. McGehee;" which is equivalent to saying, "even to that extent I revoke my bequests and codicils."   Had she intended to revoke the codicils about the homestead, would she not have said something showing severer regret?   Or must we believe she was more attached to the life policy than to her home, Hollywood house and section 32, where she had lived for over thirty years, and lands belonging to it, containing the family cemetery, and which she had carefully kept intact in four separate acts of devise, and express no sorrow at dismembering it?   "I hereby revoke all codicils and bequests save my dwelling house and furniture belonging to the same," says the last codicil.

Codicil No. 3 deals only with the Hollywood house and furniture and section 32, except to revoke the provision for a monument; and codicil four deals only with the house and lands. The word "save" takes out of the revocation some codicils or codicil, and those are the ones that dispose of her dwelling house and its furniture.   They are saved.   They are saved from the sweep of the revoking codicil, as counsel rightly claims, and those codicils devise section 32 and the dwelling—in other words, Hollywood house and section 32.   It was not needed to pay the debt, for no demand has been made upon it for that purpose.   It is suggested that this revoking codicil is obscure. If so, that only strengthens the contention of appellee.   It makes no grant, but overturns and destroys former grants unequivocally made; and it cannot invade the will beyond what was clearly intended by the testatrix.   Jarman on Wills (6th

ed.), p. 179, sec. 19; *Gelbke* v. *Gelbke*, 88 Ala., 427 (6 South., 834); *Appeal of Reichards*, 116 Pa. St., 232 (9 Atl., 311); *University* v. *Pinckney*, 55 Md., 365–380, and cases there cited. This last case was exhaustively argued, and decided with great care, and it is there said: '' In determining the question of revocation of a will by a codicil, all the cases agree: (3) Where the devise or bequest in the will is clear and free from doubt, the intention to revoke by the codicil must be equally clear and explicit,'' citing many authorities.

It seems to be, from a careful consideration of this will and codicils together, a fair and reasonable construction of the intention of the testatrix that codicils Nos. 3 and 4 should remain in force. They are not so inconsistent as to be unable to stand together with the last codicil. The clear and unmistakable intention of the testatrix, manifested and expressed in codicils Nos. 3 and 4, is not necessarily revoked by the last codicil, which is not as clear and explicit as are Nos. 3 and 4. Had the testatrix intended to take from Hollywood house section 32, surely she would have left some land with it, and not left a farmhouse in the country without lands. This view is strengthened by the fact, shown by the proof, that the estate was settled up with Sarah E. McGehee in possession of Hollywood, including section 32, claiming it as her own, and no objection was made until 1895, seven years after the death of testatrix; and W. E. McGehee, one of the heirs, testifies, against his own interests, that he heard Mrs. Dandridge say, a few years before her death, that she wanted Hollywood place to go to Sarah E. McGehee for life, and then to John S. McGehee, and that the possession of Hollywood place (house and section 32) by Sarah E. McGehee was continuous and notorious from January, 1888, to that time, February 14, 1896.

*The decree of the court below is affirmed.*