ANNA K. MILLER and KATE B. ROBB,

Defendants Below, Appellants

*vs.*

EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of Hannah M. Brown, Deceased.

Complainant Below, Appellees.

*Supreme Court, On Appeal, April 28, 1943.*

LAYTON, C. J., RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*William Poole,* for appellants.

*Albert W. James,* of the firm of Hering, Morris, James & Hitchens, and Henry W. Bryan, for appellees.

TERRY, Judge, delivering the opinion of the court:

This case concerns an appeal from a final decree of the Court of Chancery entered on the 27th day of May, 1942, wherein the Chancellor placed a construction upon the last will and testament and codicil of Hannah M. Brown, deceased, which resulted in partial intestacy. That portion of the last will and testament of Hannah M. Brown, deceased, dated the 4th day of December, 1925, which is pertinent to this issue, is as follows:

"First:—I order and direct the payment of all my just debts and funeral expenses by my Executor hereinafter named, as soon as conveniently may be after my decease.

"Second:—I give and bequeath unto my sister, Elmira P. Spangler, for and during the term of her natural life, all furniture, jewelry and clothing owned by me at the time of my decease, and upon her decease to be equally divided among my niece, Anna K. Miller, my niece, Kate B. Robb, and Margaret Brown, wife of my nephew, Hugh M. Brown, division to be made by them as equally as may be. In the event of

the death of one or more of these persons, the survivor or survivors shall be entitled to all of the articles bequeathed under this item.

"Third:—All the rest, residue and remainder of my Estate, real, personal or mixed, of whatsoever kind and wheresoever situate at the time of my decease, I give, devise and bequeath unto Equitable Trust Company, a corporation of the State of Delaware, in trust, nevertheless, for the following uses, intents and purposes: that is to say—to hold, lease and manage the real estate; to collect the income arising therefrom, to pay the taxes, insurance and repairs and such other charges as may be necessary to keep the property in good condition. To invest the personal property in good income producing securities, with power from time to time at its discretion to call in and reinvest the same, and, after deducting a reasonable compensation for its care and trouble, including the cost, taxes and expenses incident to conducting the trust, to pay the net income arising from the said Trust Estate unto my sister, Elmira P. Spangler, now residing at No. 1325 West Fourth Street in the City of Wilmington aforesaid, for and during the term of her natural life, and upon her decease to convert the whole of the said trust estate into cash and to pay thereout as follows:

"Unto my nephew, Hugh M. Brown, the sum of Two Thousand ($2,000.00) Dollars.

"Unto my nephew, Theodore B. Messick, the sum of Two Thousand ($2,000.00) Dollars.

"Unto my grandniece, Blanche Miller, the sum of Four Thousand ($4,000.00) Dollars.

· "Unto my grandniece, Mary Emma Brown, the sum of One Thousand ($1,000.00) Dollars.

"Unto my grandniece, Elizabeth Brown, the sum of One Thousand ($1,000.00) Dollars.

"And to divide the remainder of the principal of the said trust estate with the accumulated income between my nieces Anna K. Miller and Kate B. Robb, share and share alike, free and discharged from all trusts.

"Provided, however, that if any of the legatees named under this item should not be living at the time of the decease of my sister, Elmira P. Spangler, then and in that event I direct that the amount that such legatee would have been entitled to receive, shall be paid to his or her issue, share and share alike by right of representation, and in default of such issue, unto the respective executors or administrators of such deceased person or persons."

On March 27, 1934, the testatrix made and executed a codicil to her will of December 4, 1925, as follows:

"I, Hannah M. Brown, of Wilmington, Delaware, make the following codicil to my will dated the 4th day of December, 1925, and hereby ratify that will in all respects except as changed by this codicil.

"On page two of that will I make certain bequests to be paid after the death of my sister, Elmira P. Spangler. I now strike out Item Third of my will entirely and substitute the following which shall become Item Third of my will:

" 'Item Third: All the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever kind and wheresoever situate at the time of my decease, I give, devise and bequeath unto Equitable Trust Company a corporation of the State of Delaware, in trust, nevertheless, for the following uses, intents and purposes; that is to say—to hold, lease, and manage the real estate; to collect the income arising therefrom, to pay the taxes, insurance and repairs and such other charges as may be necessary to keep the property in good condition, to invest the personal property in good income producing securities, with power from time to time at its discretion to call in and reinvest the same, and after deducting a reasonable compensation for its care and trouble, including the cost, taxes and expenses incident to conducting the trust, to pay the net income arising from the said trust estate unto my sister, Elmira P. Spangler, now residing at No. 1310 West Fourth Street in the City of Wilmington aforesaid, for and during the term of her natural life, and upon her decease to convert the whole of the said trust estate into cash and to pay thereout as follows:

"Unto my nephew, Hugh M. Brown, the sum of One Thousand Dollars ($1,000.00).

"Unto my nephew, Theodore B. Messick, the sum of One Thousand Dollars ($1,000.00).

"Unto my grandnephew, Clifford Miller, the sum of One Thousand Dollars ($1,000.00).

"Unto my grandnephew, Albert Miller, the sum of One Thousand Dollars ($1,000.00).

"Unto my grandniece, Edith Woodmansey, the sum of One Thousand Dollars ($1,000.00).

"Unto my grandnephew, Ernest Robb, the sum of One Thousand Dollars ($1,000.00).

"Unto my grandniece, Blanche Miller Tithe, the sum of Two Thousand Dollars ($2,000.00) if she shall survive my said sister, and if she shall not survive my said sister, share and share alike to my said grand-

niece's children and if she shall not have any children then surviving, then the same to be divided equally between my grandnephews, Clifford Miller and Albert Miller.'"

The testatrix died on the 20th day of June, 1937. The Equitable Trust Company, after being duly qualified as executor and trustee, filed the bill of complaint below praying that the Chancellor make a decree determining whether or not Hannah M. Brown, the testatrix, died intestate as to the remainder of the trust estate after the payment of the legacies given under the codicil. The Chancellor conducted a hearing, and admitted testimony tending to show that Kate B. Robb, a respondent below, now one of the appellants, lived next door to the testatrix, saw her every day, and for the last two weeks of the deceased's life held a power of attorney to manage her affairs; that the testatrix frequently visited her niece, Anna K. Miller, in Philadelphia; that the testatrix seldom saw her other next of kin.

The Chancellor admitted the following memorandum found among the testatrix' papers, the same being in her handwriting:

| | |
|---|---:|
| "To my nephew, Hugh M. Brown | $1000.00 |
| To my nephew, Clifford Miller | 1000.00 |
| To my nephew, Theodore B. Messick | 1000.00 |
| To my nephew, Albert Miller | 1000.00 |
| To my grandniece, Edith Woodmansey | 1000.00 |
| To my grandnephew, Ernest Robb | 1000.00 |
| To my grandniece, Blanche Miller Tithe | 2000.00 |

In case Mrs. Tithe should die it is to go to her children, if no children it is to be divided equally between Clifford and Albert Miller."

The reasons supporting the contentions of the parties below were basically the same as before us; that is, the appellants contend that they are the residuary legatees under the will and codicil properly construed, whereas the appellees contend that they are entitled to the residuary estate as the next of kin upon the theory that the residue of the estate was not disposed of.

The opinion handed down by the Chancellor was informal. It will be found in a letter addressed to the solicitors as of May 14, 1942. The material portion thereof is as follows:

"The time has arrived for the distribution of the estate of Hannah M. Brown, but I am forced to the conclusion that the original bequest of the remainder (after the payment of certain specified legacies) to Anna B. Miller and Kate B. Robb never took effect. The language of the codicil is so clear and specific, that no question of construction can be involved when it is read in connection with the will. 'Except as changed' by the codicil, the will is ratified; but under the codicil Mrs. Brown struck out 'Item Third of my will entirely and substitute the following which shall become Item Third of my will'. It is, therefore, difficult to escape the conclusion that the language of the codicil was substituted for the prior item of the will, and is necessarily controlling. The substituted provisions are even in quotation marks. If the original disposition of the residue were omitted from the codicil by mistake, I cannot do anything about it. I must construe the language used, and cannot insert a provision that does not appear in the substituted language."

On the 27th day of May, 1942, the Chancellor entered a decree under which the complainant was instructed that the testatrix died intestate as to the remainder of the trust estate, and the same should be distributed among the next of kin pursuant to the intestate laws of this State.

The appellants maintain that a reading of the will and codicil together reveals an ambiguity that requires interpretation. They assert that the language employed by the testatrix connotes that she did not intend to revoke the residuary clause of her will and die intestate as to a large portion of her estate. The appellants rely upon the rule that a will and codicil shall be taken and construed together as parts of one and the same instrument, yet, the dispositions of the will shall not be disturbed by the codicil any further than is necessary to give effect to the latter. *Lodge, Executor v. Grubb*, 1925, 15 *Del. Ch.* 12, 130 *A.* 28. To the stated rule they add the presumption against intestacy, and say that when an expression of revocation is found in a codicil, such

will not be accepted to defeat the testator's true intention, and that a construction will be limited to the changes that the testator desired to make. *Appeal of Reichard,* 116 *Pa.* 232, 9 *A.* 311.

In analyzing the appellants' position it must be borne in mind that given rules of construction find their application only in cases of doubt, for when the language employed is clear and readily understandable it would be as erroneous to attempt to apply any given rules of construction as it would be to refuse their application in proper instances. Clear intent as expressed must be enforced, provided such intent does not oppose the policy of the law. We are bound to follow that intent, if the expression is plainly discernable from the language employed, and in such cases surrounding facts and circumstances can be of no importance. Their importance spring into being only when the language employed is ambiguous. The rules governing the interpretation of a codicil to a will are identical to those that apply to the will itself. We are bound thereby and the power is lacking for us to make a new will for the testator, or by some semblance disguised under the theory of construction invoke an idea that might to our minds be a more equitable scheme of disposition. A person's will, to him at least, is in the category of a sacred instrument. It speaks after the death the wish, the desire, the intent of the deceased. If the intent therein be clearly expressed, it will not be disturbed, and the testator's discretion as evidenced by his intention will be upheld.

The appellants advance several arguments in support of their position: first, they argue that the testatrix in executing her codicil never intended to alter any portion of Section Third of her will, except the first paragraph thereof where she bequeathed certain and specific pecuniary legacies; that she never intended, nor is there any indication that she intended, to strike out or negative the second paragraph of Section Third under which she disposed of the residue of the principal of the trust to the appellants. The appellants seize

the language of the first introductory paragraph of the codicil, "I, Hannah M. Brown of Wilmington, Delaware, make the following codicil to my last will dated the 4th day of December, 1925, and hereby ratify that will in all respects except as changed by this codicil," and argue that the language employed clearly connotes an intention on her part to die testate as to all of her property. Therefore, they contend that since her will disposed of all her property, and, since she ratified her will, that the extent of the alteration as set out in the codicil applied only to the pecuniary bequests defined in Paragraph One of Section Third. We are unable to accept the reasoning advanced by the appellants. In the first place, it necessarily precludes the idea that she was so nullifying a part of her will as to create a partial intestacy; secondly, an omission of a residuary clause in and of itself is a definite alteration, and, thirdly, the testatrix could unquestionably, if she so elected, have all or any part of her estate pass in accordance with the intestate laws of this State.

The next or second argument advanced concerns the language employed under the second sentence of the second introductory paragraph of the codicil:

"On Page 2 of that will I make certain bequests to be paid after the death of my sister, Elmira P. Spangler. I now strike out Item Third of my will entirely and substitute the following, which shall be Item Third of my will:

"Item Third:—* * *."

The appellants contend the language employed is ambiguous. They argue that the will does not contain an Item Third. They contend that we must construe the will and codicil together in order to determine what portion of her will she intended when she referred to Item Third. They contend that since the will was ratified except as specifically altered by the codicil that the testatrix by the use of the term intended to alter only the first paragraph of Section Third of her will and did not intend to alter, negative or nullify in any respect whatsoever the second paragraph of Section

Third thereof. A study of Section Third reveals three paragraphs. Under the first, a trust is established, a life beneficiary named and direction given to convert the estate into cash after her death, and five pecuniary legacies are bequeathed. Under the second, the residue of the principal of the trust estate with the accumulated income is bequeathed to the appellants. Under the third, provision is made for the disposition of the legacies in the event of certain contingencies in the following manner:

"Provided, however, if any of the legatees named under this Item should not be living at the time of the decease of my sister, Elmira P. Spangler, then, and in that event, I direct that the amount that such legatee would have been entitled to receive shall be paid to his or her issue, share and share alike, by right of representation, and in default of such issue unto the respective executors or administrators of such deceased person or persons."

The appellants' position is predicated upon the rule that clear and specific language is required to nullify a gift under a will, and at the same time create a partial intestacy. Our difficulty with the appellants' contention lies in the fact that it is clear to us, as manifested by the language employed, that the testatrix intended Section Third of her will to be Item Third of her will. She so stated in Paragraph 3 of Section Third thereof. The form adopted by her in the codicil is certain. The language employed is most explicit and we are of the opinion that she has written an entirely new Item Third in which a residuary clause is omitted.

The third argument advanced by the appellants relates to the language found in the first sentence of the second introductory paragraph in the codicil: "On Page 2 of that will I make certain bequests to be paid after the death of my sister, Elmira P. Spangler." The appellants contend that the words "bequests to be paid," of which the testatrix specifically speaks, refer only to the bequests set forth in Paragraph 1 of Section Third. They contend that in the second paragraph of Section Third the testatrix directed the trustee to divide the remainder of the trust between the appellants

and argue that it is clear that the testatrix did not refer to such division when she made her codicil, as she recited what she had in mind as "bequests to be paid." They further argue the phrase "to be paid" has an entirely different connotation from the words "to divide." It appears to us that an answer to the appellants' contention rests in the main on the proper meaning to be ascribed to the words "certain bequests," as used in the codicil. Certainly, the cash gifts to the residuary legatees fall in the category of bequests. True they are not specific in amount; yet, they are pecuniary in character.

We think the fact that the residuary bequests were not designated as sums certain is of no importance. They are bequests, nevertheless, and, in order for us to conclude that the testatrix in using the words "bequests to be paid" in her codicil referred only to the bequests in Paragraph 1 and not the bequests in Paragraph 2, would carry us far into the forbidden field of speculation and conjecture. This we cannot do.

The remaining argument advanced by the appellants is predicated upon the following rule:

"* * * that words always need interpretation; that the process of interpretation inherently and invariably means the ascertainment of the association between words and external objects; and that this makes inevitable a free resort to extrinsic matters for applying and enforcing a document." 9 *Wigmore, Ev.,* (*3rd Ed.*) 227.

The contention is that an examination of the will and codicil in question leaves no doubt that what is meant by the codicil is ambiguous. The rule is based solely upon the existence of an ambiguity, and, since we have concluded that no ambiguity exists in the language employed by the testatrix in adopting her codicil, it is apparent that the rule would have no application; therefore, facts and circumstances surrounding the execution of the codicil are of no importance.

The appellants place much emphasis on the case of the *Appeal of Reichard,* above. We accept the conclusion as laid

down in that case, but think it not applicable here. In the *Reichard* case an ambiguity was found to exist from the language employed in the codicil.

If a mistake was made in the writing of the codicil in this case, it is, to say the least, unfortunate, and we are not certain that the codicil, by mistake, did not contain a residuary clause. However, this court has no power to correct a mistake, and it cannot, by the introduction of parol evidence, rewrite the codicil.

The decree of the court below is sustained.