OLIVE CARVIN CLEVELAND and EDWARD TERRENCE CARVIN, Defendants Below, Appellants,

*vs.*

DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of LUCY MERRITT CARVIN, Deceased,

Plaintiff Below, Appellee,

and

JEANNE CARVIN EDWARDS and ALBERT MCLAVERTY, Defendants Below, Appellees.

*Supreme Court, On Appeal, September 19, 1950.*

RICHARDS, C. J., TERRY, CAREY and LAYTON, JJ.,
sitting.

538

*Daniel F. Wolcott,* of the firm of Southerland, Berl & Potter, for plaintiff.

*C. Edward Duffy,* of the firm of Logan, Duffy & Boggs, for defendants Olive Carvin Cleveland and Edward Terrence Carvin.

*J. Rankin Davis,* for defendant, Jeanne Carvin Edwards.

LAYTON, Judge, delivering the majority opinion of the court:

The problem presented by this appeal was caused by inexpert draughtmanship which resulted in Item 9th of the will failing to provide what should be done at the end of seven years from testratrix' death in the event the trustee did not elect to purchase an annuity which would yield $75 monthly each to Olive Carvin Cleveland and Edward Terrence Carvin, testratrix' sister and brother.

Item 6th directs that the sister and brother should receive $50 monthly for seven calendar years following testatrix' death. Item 9th employs this curious language "Following the lapse of seven calendar years after my death, * * * I hereby authorize and empower my executor, if he so elects, to convert into cash and to negotiate an instrument with some reliable insurance company whereby the proceeds of the investment fund may be used to purchase annuities that will provide for a monthly payment as near to $75 or more to Olive Carvin Cleveland and as near to $75 or more to Edward Terrence Carvin, for the rest of their natural lives * * *." The item is completely silent as to what were the trustee's powers in the event it should not elect to purchase an annuity. Nor does the codicil specifically answer this very important question.

Under the circumstances, counsel for Jeanne Edwards,

the niece, contends that a partial intestacy resulted after seven years from testatrix' death insofar as the brother and sister were concerned, and that his client should be declared the beneficiary of monthly payments in the amount of $75 for her lifetime, in accordance with Item 6th of the codicil. The argument is not without merit for courts, while they may interpret and construe, are nevertheless powerless to supply missing provisions in wills. *Miller v. Equitable Trust Co.*, 27 *Del. Ch.* 282, 32 *A.* 2d 431. But aside from the natural reluctance on the part of courts to declare an intestacy, we are of the opinion that the problem is otherwise capable of solution.

A careful reading of the entire will and codicil leads to the inescapable conclusion that testatrix' brother and sister were the paramount objects of her bounty and that she intended to give them a life income from the corpus of her estate, even to the extent, if necessary, of exhausting her entire estate. The most significant factor, though by no means the only one, pointing to this result is the language of Item 6th of the codicil which states, *inter alia,* "should any part of my trust estate remain upon the death of my brother, Edward Terrence Carvin, and my sister, Olive Carvin Cleveland * * *" then the trustee is directed to pay $75 monthly to the niece, or to a cousin should the niece then be dead. We think, then, that without resort to extrinsic evidence, the will is fairly capable of the interpretation that testatrix intended that her brother and sister should have a life income from the trust established by Item 6th of the codicil. The Vice Chancellor apparently arrived at the same interpretation for he said:

"It is apparent from Item 6th of the codicil that the testatrix contemplated the creation of a trust which would last during the lives of her brother and sister, or until the fund was exhausted."

The Vice Chancellor, however, concluded that Item 6th of the codicil impliedly repealed Item 9th of the will, the power to elect to purchase an annuity, and arrived at the result that testatrix intended that her brother and sister

should each receive $50 monthly for life on the expiration of seven years from her death. While we are inclined to agree that the language of Item 6th of the codicil, because inconsistent with Item 9th of the will, impliedly emasculated the power of the trustee to purchase an annuity under Item 9th, we think it does not necessarily follow that testatrix intended thereby to re-adopt the provisions of Item 6th providing for payments of $50 monthly which, by the very language thereof, was expressly limited to a period of seven years.

If the will, as we think, left a life income from the trust to the brother and sister, then the only question remaining is one of interpretation, namely, how much they were to receive. And in analogous cases courts have not infrequently resorted to an examination of the entire instrument, together with such extrinsic evidence as may be germane, in order to arrive at the intention of the testator with respect to amount.[1]

This is not a situation where a testator left a life estate in a fund without specifying the amount of income the beneficiary should receive. In such event it would be supposed that the beneficiary would receive whatever income such fund produced and no more. Here, testatrix specified that her brother and sister should receive $50 per month each for seven calendar years after her death even though the fund might be thereby exhausted, which negatives the thought that after seven years from her death, they were to enjoy only such income as the trust might produce. Further, by Item 9th, she has provided for an increase in the monthly payments to $75 each should the trustee elect to purchase an annuity.

Now, bearing in mind our conclusion that the brother and sister were the life beneficiaries of the fund, and that the payments of $50 each monthly were to last for seven

---

[1] 57 *Am. Jur. Wills*, Sec. 1167 and *Cummings v. Tolman*, 292 *Mass.* 58, 197 *N.E.* 476, 101 *A.L.R.* 1457, with annotations at 1461.

years, then the inference from Item 9th, though not conclusive, nevertheless strongly suggests that the testatrix intended that the monthly payments should be raised to $75 in any event at the expiration of seven years from her death.

Moreover, we are of the opinion that resort to certain extrinsic evidence may properly be had in order to arrive at testatrix' intent in this respect. The uncontradicted evidence shows that, at the time she made her will, certain insurance policies were in force which she had taken out on her own life to provide monthly payments of $50 to her brother and a like sum to her sister. These payments would commence, of course, upon her death and under the terms of the policies would continue for seven years thereafter when the payments thereunder would terminate. This one fact sheds considerable light upon the terms of the will and codicil. From the insurance proceeds and from Item Sixth of the will, her two principal beneficiaries would receive $100 monthly each for seven years following her death, that is, $50 each from the trust and $50 each from the insurance. After seven years, the insurance payments would cease. What is more natural to suppose than that testatrix wished the monthly income from the trust to be increased after seven years in order to compensate partially for the loss of the insurance payments?

Assuming the correctness of this reasoning it is not difficult to conclude that testatrix intended at the expiration of seven years from her death that the monthly payments to her brother and sister should be increased to $75 for their lives, or until the corpus became exhausted. We say this because in our judgment it would be altogether unreasonable to suppose that testatrix intended an increase in the monthly payments only if accomplished by means of the purchase of an annuity.

The problem here presented is not an easy one. A layman prepared the will and the choice of language was most

inept. However, the will itself is fairly susceptible of the construction that testatrix' predominant intention was to provide for the support of her brother and sister through the creation of a trust which was to last for their lives or until the fund was exhausted. In concluding that a gift of income for life was intended, and we are confident that it was, we have not written a missing provision into the will in violation of the principle announced in *Miller v. Equitable Trust Co., supra,* and the only remaining question is how much were her brother and sister to receive after the expiration of seven years from testatrix' death. The ambiguity thus presented is one capable of being solved with reasonable certainty by resort to the language of the will itself and the extrinsic evidence above considered. Few direct precedents are found in cases interpreting wills because of the infinite variety of situations presented and we can only look to the decisions for certain basic principles of construction which we believe were not violated here in arriving at the result found. If it should be said that our interpretation of this will is somewhat strained, we can only say that the construction of wills is always a matter of speculation to a greater or lesser extent, and that the solution here arrived at more accurately represents the true intention of the testatrix. Basically we have differed with the Vice Chancellor only in considering certain extrinsic evidence which he deemed inadmissible, but if examined, throws a much clearer light on what was intended concerning the monthly payments at the expiration of seven years from testatrix' death. Evidence of the situation of the testator and the circumstances surrounding him at the time of the making of the will is generally admissible in resolving an ambiguity. *Bird v. Wilmington Society of The Fine Arts,* 28 *Del.Ch.* 449, 43 *A.2d* 476. And the fact that we have considered evidence of the circumstances of this testatrix at the time she made her will in connection with a codicil executed some six months later does not violate settled principles in view of the fact that, with the

exception of the inference to be gained from Item 6th of the codicil to negative the power to purchase an annuity, nothing in the codicil indicates an intention to change substantially the terms of the will itself. Indeed, by Item Three of the codicil testatrix directs her trustee to "administer and distribute the net income and principal thereof with all the duties, powers and compensation granted in my last will and testament * * *."

The decree of the Vice Chancellor is accordingly modified and a mandate will be entered in conformity with the views expressed.

TERRY, Judge (dissenting) : The pertinent provisions of the will and codicil, together with the contentions of the respective parties, appear in the majority opinion of this court and in the opinion of the Vice Chancellor below. 30 *Del. Ch.* 339, 61 *A.* 2d 126.

It is with extreme reluctance that I disagree with my associates, but I find it very dangerous for courts, in order not to declare a partial or total intestacy, to supply necessary provisions in order to accommodate their interpretation of testamentary intention. I cannot escape the conclusion in the present case that a partial intestacy took place after seven years from the testatrix' death insofar as Olive Carvin Cleveland and Edward Terrence Carvin are concerned, which would result in Jeanne Carvin Edwards being the beneficiary of monthly payments in the amount of $75.00 for her lifetime, in accordance with Item 6 of the codicil.