FIDUCIARY TRUST COMPANY OF
NEW YORK, Respondent
Below, Appellant,

v.

FIDUCIARY TRUST COMPANY OF
NEW YORK, Petitioner
Below, Appellee,

v.

Mary A. and Thomas F. GRASSELLI Endowment Foundation, Harry W. Grasselli and Josephine G. Winter, Fiduciary Trust Company of New York, Respondents Below, Appellees.

Supreme Court of Delaware.

Submitted Feb. 10, 1982.

Decided April 20, 1982.

Henry N. Herndon, Jr. (argued) and Clark W. Furlow, of Morris, James, Hitchens & Williams, Wilmington, for Fiduciary Trust Co. of New York, trustee under agreement dated Dec. 23, 1964, respondent below, appellant.

Richard G. Bacon (argued) and Thomas P. Sweeney, of Richards, Layton & Finger, Wilmington, for Fiduciary Trust Co. of New York, executor and trustee under the wills of Thomas Fries Grasselli and Mary A. Grasselli, petitioner below, appellee.

Thomas G. Hughes (argued) and Mark D. Sisk, of O'Donnell & Hughes, Wilmington, for Harry W. Grasselli and Josephine G. Winter.

John Biggs, III, of Biggs & Battaglia, Wilmington, for Mary A. and Thomas F. Grasselli Endowment Foundation.

Before HERRMANN, Chief Justice, McNEILLY and QUILLEN, Justices.

HERRMANN, Chief Justice:

This appeal is from a ruling by the Court of Chancery upon the petition of Fiduciary Trust Company, as Executor of the Estate of Thomas F. Grasselli, seeking instructions for the proper distribution of a portion of a trust corpus.

## I.

In his Will, executed in 1965, Mr. Grasselli (hereinafter "Testator") directed specific gifts of personalty and real estate to his wife, Mary A. Grasselli; and in the event she predeceased him, those gifts were to go to his niece, Grace Grasselli Fowler. Specific cash bequests were made, including $50,000. to Robert A. Fowler, the husband of Grace Grasselli Fowler. A picture was bequeathed to Grace Grasselli Fowler for her life, then to Testator's grandniece Mary Antonia Fowler.

The Will then created a trust (hereinafter "Marital Trust"), for the benefit of Testator's wife, naming Fiduciary Trust Company trustee, the corpus to be created from an amount equal to one-half of the value of the Testator's adjusted gross estate as determined for Federal estate tax purposes. Testator directed that the Will be construed in such manner as to assure the qualification of the Marital Trust, as such, under the Internal Revenue Code of 1954. The income was to be paid to the Testator's wife for life, with the power reserved to her to invade the principal if additional funds were needed for her support. Upon her death, the Trust corpus was to be distributed in the manner appointed by her last will and testament. In the event she failed to exercise such power of appointment, Testator provided the following distribution: (1) 45% in trust with the income therefrom to Grace Grasselli Fowler for life and, upon her death, the corpus free of trust to her children; but in the event Mrs. Fowler died without children, 8/11 of the corpus was to be paid to the Grasselli Endowment Foundation and 3/11 to the Cleveland Charities Trust; (2) 40% to the Grasselli Endowment Foundation; and (3) 15% to the Cleveland Charities Trust.

Mary A. Grasselli died in 1979. By her will, she exercised the power of appointment as follows: (1) 48% to the Fowler trust; (2) 43% to the Endowment Foundation; and (3) 9% to the Cleveland Charities. Mary Grasselli's will included a residuary clause naming Grace Grasselli Fowler beneficiary absolutely.

Out of the residuary portion of his estate Testator directed the creation of a second trust (hereinafter "Residuary Trust"), the income to be paid to his wife for the remainder of her life. However, unlike the Marital Trust, she was not given power of appointment over the distribution of the corpus, nor was she permitted to invade it. After the expiration of the wife's life estate, Testator directed a distribution of the Residuary Trust mirroring the distribution specified for the Marital Trust: (1) 45% in trust with the income to Grace Grasselli Fowler, for life, and upon her death, the corpus to her children free of trust; but in the absence of any living children of Mrs. Fowler, the Grasselli Endowment Foundation was to receive 8/11 of the corpus with 3/11 going to the Cleveland Charities Trust; (2) 40% to be paid to the Endowment Foundation; and (3) 15% to be paid to the Cleveland Charities Trust. Until final distribution, invasion of the principal was expressly limited to sums needed to support beneficiaries who might be minors or incompetents. Also, all premiums and dividends from stock of investment companies were to be credited to the principal and not to income.

The First Codicil executed by Testator in 1966 directed certain modifications to the Will provisions. Principally relevant here, a reallocation of the distribution percentages of the Marital and Residuary Trusts was set forth: (1) the 45% originally designated to Grace Grasselli Fowler in trust was increased to 48%; (2) the 40% directed to the Grasselli Foundation was increased to 43%; and (3) the Cleveland Charities share reduced from 15% to 9%.

In 1969, the Testator executed a Second Codicil in holographic form, revoking the contingent gifts of personalty and real estate to Grace Grasselli Fowler and reducing the $50,000. cash bequest to her husband to $25,000. Further, the Second Codicil provided a new set of percentages for use in distributing the corpus of the Marital and Residuary Trusts—the Marital Trust ultimately passing as directed by Mary A. Grasselli's Will: (1) the 48% created by the First Codicil for the benefit of Grace Gras-

selli Fowler was "reduced to a total of not more than 20%"; (2) the share allocated to the Endowment Foundation was modified to read "shall at no time exceed 40%".*

No reference was made to the Cleveland Charities anywhere in the Second Codicil. It is that omission which created the necessity for the petition for instructions in this case; the percentages no longer totaled 100%.

The parties agree that 20% of the corpus of the Residuary Trust must go to the Fowler family. They have also stipulated that the Endowment Foundation shall receive 41%. Finally, they agree that Cleveland Charities shall receive the 9% provided for in the First Codicil, that amount not having been expressly revoked.

The question, then, is how the undesignated 30% must be distributed.

## II.

### A.

As to that question, the parties take these positions:

(1) On behalf of Cleveland Charities, it is argued that the failure of the Testator to designate the distribution of the 30% was merely an omission, and the argument continues: Viewing the entire testamentary scheme, the Testator intended the undesignated portion of the trust to go to the Cleveland Charities. In essence, Testator's fundamental plan was to provide for his wife for her life and to preserve the principal of the Residuary Trust for the designated remaindermen. A finding of partial intestacy would result in a distribution destroying the Testator's intent as evidenced by his overall scheme and his apparent understanding of the interrelationship of the respective percentages. Stated differently, a finding of intestacy would result in an increase in, or actual creation of, interests of parties whose interests the Testator either purposefully omitted or expressly limited—as to the former, the collateral heirs, and as to the latter, Grace Grasselli Fowler.

(2) The second position is that of the estate of Testator's wife from which Grace Grasselli Fowler inherits as the residuary beneficiary. Basically, Mrs. Fowler's contention is that in the absence of any express provision as to the distribution of the 30%, the Second Codicil created a partial intestacy.** In light thereof, Mrs. Fowler asserts that the intestate heirs must be determined as of the time of the Testator's death, in which case the undesignated 30% would pass to the estate of Testator's wife and be distributed according to her will under the residuary clause.

(3) The third position is that of the Collateral Heirs consisting of Harry W. Grasselli, the only living brother of the Testator, and Josephine Grasselli Winter, another niece. They agree that the Second Codicil created a partial intestacy, but contend that the intestate heirs must be determined at the death of the life tenant in which case they become the intestate next of kin.

---

* The provisions of the Second Codicil relevant to the trust distributions provide:

"*Second: The Trust*, presently included in my Will or First Codicil *for my niece, Grace Grasselli Fowler*, and her children in the amount of 45% [interlineated 48%] of my estate is hereby and immediately *reduced to a total of not more than 20%*. Under no circumstances is it to become effective prior to the deaths of both Thomas Fries Grasselli and Mary Allen Grasselli.

"This reduction applies to any or all references to my niece Grace Grasselli Fowler, at any place it appears in my Will or First Codicil.

"*Third: The Mary A. and Thomas F. Grasselli Endowment Foundation shall at no time exceed 40%* [interlineated 43%] of the final remainder estate of Thomas Fries Grasselli or Mary Allen Grasselli.

"Until the death of the final survivor, Thomas Fries Grasselli or Mary Allen Grasselli, no funds are to be used for this purpose, therefore, nothing is to be deleted from the estate and placed in the Endowment Foundation." (emphasis added)

** Intestacy is statutorily controlled by 12 *Del.C.* § 501 which provides:

"§ 501. Intestate estate.

"Any part of the real or personal estate of a decedent not effectively disposed of by will passes to the decedent's heirs as prescribed in the following sections of this chapter."

## B.

The Court of Chancery in an unreported opinion, *Fiduciary Trust Co. v. Fiduciary Trust Co.,* C.A. No. 6071 (May 11, 1981), granted summary judgment for the estate of Testator's wife and, by extension, for Grace Grasselli Fowler. The Trial Court held that this case is controlled by *Miller v. Equitable Trust Co.,* Del.Supr., 32 A.2d 431 (1943), and concluded that, thereunder, a finding of a partial intestacy was compelled.

The Trial Court then addressed the issue of when the intestate heirs should be determined and, in so doing, recognized the long-standing rule that "[a]bsent a clear and unambiguous manifestation of a contrary intent, intestate next of kin will be determined at the time of death of the [Testator] rather than at the time of death of the life tenant. [citing] *Bank of Delaware v. Bank of Delaware,* Del.Supr., 301 A.2d 280 (1973); *Delaware Trust Co. v. Delaware Trust Co.,* Del.Ch., 91 A.2d 44 (1952)." Finding no such clear manifestation of a contrary intent, the Trial Court concluded that the intestate heirs must be determined as of the date of the death of Thomas F. Grasselli.

Appeals are brought on behalf of Cleveland Charities and the Collateral Heirs.

## III.

The decision below, having been rendered on cross-motions for summary judgment and on a "paper" record, the scope of review on appeal calls for this Court to review the entire record and draw its own conclusions with respect to the facts if the findings below are clearly wrong and if justice requires, especially where the findings arise "from deductions, processes of reasoning or logical inferences." *Application of Delaware Racing Asso.,* Del.Supr., 213 A.2d 203, 207 (1965); *International Boiler Workers v. General Waterworks,* Del.Supr., 372 A.2d 176 (1977).

## A.

The cardinal rule of law in this Will contest is that the intent of the testator controls. *Delaware Trust Co. v. McCune,* Del.

Ch., 269 A.2d 256 (1970), aff'd sub nom. *Bank of Delaware v. Delaware Trust Co.,* Del.Supr., 280 A.2d 534 (1971). *Chinn v. Downs,* Del.Ch., 421 A.2d 915 (1980). All other rules of construction "must be subordinate to that objective", *Riggs Nat'l Bank of Washington, D.C. v. Zimmer,* Del.Ch., 304 A.2d 69, 71 (1973), their value being as aids in ascertaining the testator's intent as precisely as possible. *Bird v. Wilmington Society of Fine Arts,* Del.Supr., 43 A.2d 476 (1945). It follows that each case must be viewed individually, looking to the facts of the case and the testamentary scheme, the precedential value of other cases being necessarily limited by factual distinctions.

The Trial Court recognized the foregoing guiding principles in the following language: "Rules of construction abound, derived from numerous case precedents in this State and supported by a virtually limitless supply of precedents from other jurisdictions. All such precedents, in turn, derive from a particular set of facts and circumstances . . . ." The Trial Court concluded, however, that the instant case is controlled by *Miller v. Equitable, supra,* in which a partial intestacy was found. We must disagree because of distinguishing facts and circumstances.

In *Miller,* the will of the testatrix included a residuary clause, leaving by Item Third the remaining principal of a trust to two nieces after the death of the life beneficiary and allowing for some specific cash bequests. She later executed a codicil expressly revoking Item Third: "I now *strike out* Item Third of my will *entirely and substitute* the following which shall become Item Third of my will." (emphasis added). The new Item Third contained no residuary clause and made no mention of the two nieces. As such, the Court found that the testatrix intended to create a partial intestacy. To the contrary, in the present case, the codicils make no express revocation as to the distribution of the trust; rather, they indicate only a modification of the distribution percentages. This is a determinative distinction of fact in *Miller* as a controlling authority in the instant case.

### B.

■ In ascertaining the testamentary intent of Thomas F. Grasselli, we give due recognition to the presumption against partial intestacy, *Society for Propagation of Faith v. Joswick*, Del.Ch., 180 A.2d 617 (1962), that presumption being particularly strong when, as here, a validly executed will exists. *Shane v. Johnson*, Del.Ch., 99 A.2d 557 (1953). Absent clear evidence to the contrary, a partial intestacy will not be inferred. *Stackhouse v. Webster*, Del.Supr., 169 A.2d 253 (1961). We find no such clear evidence to the contrary in this case and, therefore, hold that Testator's Will and codicils do not create a partial intestacy.

■ The operation of the presumption is enforced by the conclusion that a finding of partial intestacy, upon which the positions of the Estate of Testator's wife and the Collateral Heirs are based, would "frustrate the testator's obvious intent in a substantial manner"—an unacceptable result in any case of this nature. *Girard Trust Co. v. Rector, Wardens and Vestrymen of St. Anne's Protestant Episcopal Church*, Del. Ch., 52 A.2d 591, 601 (1947). Compare *Jackson v. Riggs National Bank of Washington, D.C.*, Del.Supr., 314 A.2d 178 (1973). That conclusion is clearly impelled by the following considerations:

A finding for the Collateral Heirs would violate the testamentary scheme and the Testator's intent, since the Heirs have failed to overcome the presumption that intestate next of kin be determined as of the death of the testator, absent a clear manifestation of intent to the contrary. *Riggs Nat'l Bank v. Zimmer, supra*, 304 A.2d at 71. We are unable to find any provision or mention of the Collateral Heirs, individually or collectively, anywhere in the testamentary scheme. In the words of the Trial Court: "Thus, by simply looking to the consequences of such omission, it would be extraordinary to attribute an intention to him [Testator] which would favor collateral next of kin to whom he left virtually nothing . . . ."

Moreover, the Testator manifestly intended that the corpus of the Residuary Trust be preserved for the remaindermen. This is apparent from the provisions (1) denying invasion by the life beneficiary; (2) directing that premiums and dividends from investment company stock be charged to principal; and (3) until the final distribution, limiting invasion of the principal to amounts needed for support of minors and incompetents. An intestacy would violate that intent by effectively passing 30% to other than the remaindermen.

Viewed differently, a finding of partial intestacy would mean that almost one-third of the Residuary Trust corpus would pass absolutely to Testator's wife when, on the other hand, her interest had been expressly limited by the Testator to a life estate in the income from that corpus. By passing the 30% through the Mary A. Grasselli estate, the interest of Grace Grasselli Fowler would be effectively increased—a result contradictory to the express limitation of the Fowler interests by Testator in his Second Codicil "to a total not more than 20%". Compare *Delaware Trust Co. v. McCune, supra*, 269 A.2d at 259. Furthermore, a partial intestacy would effectively give a power of appointment over the 30% in question to Mary A. Grasselli when her power of appointment was expressly limited by the Testator to the distribution of the Marital Trust.

And the argument that 12 *Del.C.* § 501 requires a finding of intestacy in the absence of any express provision in the Will is without merit. The Statute requires an intestacy only when the property in question is "not effectively disposed of by will", not when the property is not "expressly" disposed of by will. In this case, as has been demonstrated, the 30% at issue is "effectively" disposed of by the necessary implication which we find requires that result as part of the overall testamentary scheme.

In passing, we note the argument that a letter to Testator from his attorney concerning the Second Codicil should have been admitted into evidence to show the attorney's opinion as to Testator's intended distribution of the Residuary Trust. Considering the clear manifestation of Testator's intent in the executed Will and Codicils, we find it unnecessary to rule on this issue.

## IV.

■ Finding that the Testator did not intend a partial intestacy, we must determine the proper distribution of the 30% at issue.

By necessary implication, from the testamentary documents read as a whole, we find that the beneficiary of the 30% of the undesignated portion of the Residuary Trust must be the Cleveland Charities. We are convinced, as Cleveland Charities argues, that Testator understood the interrelationship between the percentages; that is, that he knew that by changing one, the other two must necessarily be affected. Specifically, we hold that by limiting, in the Second Codicil, the Fowler percentage to "not more than 20%" and the Endowment Foundation's percentage to an amount not to "exceed 40%", and by not expressly revoking any prior bequest to Cleveland Charities, Testator implicitly expressed the intent that the undistributed percentage should pass to Cleveland Charities. See *Security Trust Co. v. Cooling*, Del.Ch., 76 A.2d 1, 4 (1950); 80 Am.Jur.2d *Wills* § 1385 (1975).

\* \* \* \* \* \*

REVERSED.