**Deloris A. SLINGWINE, Plaintiff Below, Appellant,**

v.

**INDUSTRIAL ACCIDENT BOARD, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: May 17, 1988.
Decided: May 4, 1989.
Rehearing Denied May 19, 1989.

Harvey Bernard Rubenstein, Wilmington, for appellant.

Robert H. Richter, Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

MOORE, Justice.

Deloris Slingwine appeals a decision of the Superior Court denying a writ of prohibition against enforcement by the Industrial Accident Board (the "Board") of an order that Slingwine submit to certain medical tests. We consider today the meaning of the term "examination" under 19 *Del.C.*

§ 2343. The insurer for Slingwine's employer requested that she submit to X-rays and other imaging tests, as well as nerve and muscle conduction studies. Slingwine refused and petitioned the Board for a ruling. The Board upheld the insurer's request and ordered Slingwine to submit to the tests. The Superior Court denied the writ of prohibition and concluded that the Board's decision holding that the term "examination" includes such tests, was not beyond the power of the Board. We agree. The plain meaning of "examination" includes all tests reasonably required to make a proper diagnosis, but which are not cumulative in effect, unnecessary or excessively invasive. Accordingly, the judgment of the Superior Court, denying the writ of prohibition, will be affirmed.

## I.

On April 4, 1986 plaintiff Slingwine, while employed by Kaumagraph Corporation, suffered a work-related injury. Kaumagraph's workmen's compensation insurer began paying temporary-total disability benefits as required by 19 *Del.C.* § 2324. Thereafter, on September 4, 1986 the insurer filed a petition for Review of a Compensation Agreement, alleging that Slingwine was no longer totally disabled. In conjunction with the petition, the insurer arranged for Dr. Joseph M. Barsky, Jr., M.D., to examine Slingwine as permitted under 19 *Del.C.* § 2343(a). After an initial examination Dr. Barsky requested that Slingwine submit to additional medical tests, including X-rays of the cervical spine, an electromyograph nerve conduction study, a skull X-ray, an electroencephalogram and a lumbar CAT scan. Slingwine refused to undergo the examinations and petitioned the Board for a legal hearing to decide whether she was required to submit to the tests.

On her own behalf Slingwine submitted the report of her personal physician stating that the tests were unreasonable and unnecessary and that the X-rays would expose Slingwine to excessive radiation. Nevertheless, the Board held that § 2343 permits all reasonable tests conducted to determine the extent of the worker's injury.

Slingwine filed a writ of prohibition in the Superior Court, alleging that the Industrial Accident Board had exceeded its powers and jurisdiction in allowing the medical tests to proceed. The Superior Court denied the writ, holding that § 2343 allows such physical examinations. Slingwine appeals that decision, arguing that the plain meaning of the statute limits "examinations" to superficial investigations.

## II.

■ Since the procedural posture of this case involves an appeal from the denial of a writ of prohibition by the Superior Court, our review is of a question of law and is, therefore, *de novo*. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927, 930 (1982). Thus, the merits of the Board's decision are not before us on appeal.

Both to determine the extent of an injury and to monitor the progress of an injured employee, the Workmen's Compensation Law permits an employer or the Board to require the employee to submit to a medical examination:

(a) After an injury, and during the period of resulting disability, the employee, if so requested by his employer or ordered by the Board, shall submit himself for examination at reasonable times and places and as often as reasonably requested to a physician legally authorized to practice his profession under the laws of such place, who shall be selected and paid by the employer. If the employee requests, he shall be entitled to have a physician, qualified as specified in this section of his own selection, to be paid by him, present to participate in such examination. For all examinations after the first, the employer shall pay the reasonable traveling expenses and loss of wages incurred by the employee in order to submit to such examination.

(b) The refusal of the employee to submit to the examination required by subsection (a) of this section or his obstruction of such examination shall deprive him of the right to compensation under this chapter during the continuance of

such refusal or obstruction and the period of such refusal or obstruction shall be deducted from the period during which compensation would otherwise be payable.

(c) No fact communicated to or otherwise learned by any physician or surgeon who has attended or examined the employee or who has been present at any examination shall be privileged either in the hearings provided for in this chapter or in any action at law.

19 *Del.C.* § 2343 (1985).

Slingwine's primary argument is that the term "examination" as used in § 2343 refers only to an inspection, either visually or by use of other senses, and that the use of imaging techniques and invasive procedures is not permitted under the statute. Slingwine contends that her interpretation of the term "examination" is its "plain meaning", and that absent an ambiguity, a statute must be construed according to its plain or ordinary meaning. *See* 2A Sutherland, *Statutes and Statutory Construction,* § 46.01 (4th ed. 1984); *Trans-Americas Airlines, Inc. v. Kenton,* Del.Supr., 491 A.2d 1139 (1985).

Slingwine's argument fails for two reasons. First, the plain or ordinary meaning of a word does not necessarily equate to its dictionary definition. As in this situation, the term "examination" in its common medical usage is not limited to what the human senses can discover. For example, persons who undergo a routine physical examination may submit to X-rays, blood tests and other clearly invasive procedures. Yet, these are part of what is commonly termed an "examination". Indeed, even the interpretation sections of the Delaware Code recognize that certain "technical" words have acquired "peculiar and appropriate meanings in the law." 1 *Del.C.* § 303.[1] Clearly, in the context of 19 *Del.C.* § 2343 the term "examination" is such a technical word.

However, even if we accept Slingwine's argument that the plain meaning of examination does not include imaging techniques or other physical procedures, we are not bound by that definition if it is inconsistent with the general intent of the Workmen's Compensation Statute. *Cf. Home Insurance Co. v. Maldonado,* Del.Supr., 515 A.2d 690 (1986); *Burpulis v. Director of Revenue,* Del.Supr., 498 A.2d 1082 (1985); *Oney v. State,* Del.Supr., 446 A.2d 389 (1982).

 Here, it is clear that the general purpose of the statute is to fairly and expeditiously compensate injured workers. It would not be reasonable or fair to base an initial determination of injury, or a determination that an injury persists, upon a mere superficial examination. Furthermore, the balance of rights established between employees and employers under the Workmen's Compensation Act would be significantly altered if employees were allowed to use X-rays to prove the existence or extent of an injury, yet employers were limited to superficial examinations to disprove such injuries. Thus, in striking a proper balance between the rights of the parties under the Act, the term "examination" must include all proper medical techniques and tests reasonably necessary to facilitate an educated diagnosis of an injury, but which are not unreasonably invasive.

### III.

Slingwine's alternative argument is that she should have been afforded a hearing and an opportunity to present and cross-examine live witnesses and submit other evidence on the issue of whether the additional medical tests requested by Dr. Barsky were "reasonable" under 19 *Del.C.* § 2343, and thus, whether she was legally required to submit to these procedures.

---

1. Statutes in Delaware are to be interpreted according to the following rule:

 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 1 *Del.C.* § 303.

■ Generally, a party must receive twenty days' notice of their right to present evidence in an administrative proceeding before the Industrial Accident Board. 29 *Del.C.* § 10122. Such evidence is not necessarily limited to written documentation such as produced by Slingwine at her hearing, but may also include the presentation and cross-examination of live witnesses. Although it appears from the record that Slingwine was afforded an opportunity to present evidence supporting her contention that the medical procedures were unduly invasive and unnecessary, she chose not to present or cross-examine witnesses during the administrative hearing.

■ Notwithstanding Slingwine's failure to take advantage of her right to present evidence and to cross-examine witnesses, a determination of the "reasonableness" of such medical procedures ordered pursuant to 19 *Del.C.* § 2343 involves a question of fact which should be determined in an evidentiary proceeding. Furthermore, in light of our decision today regarding the definition of the term "examination", and to the extent that Board Rule Number 8 is inadequate, we are persuaded that the Industrial Accident Board should establish further procedural safeguards to ensure that employees are not subject to medical tests or techniques which are unnecessary, unduly invasive, risky, or are otherwise inappropriate to an informed diagnosis of the complainant. Therefore, pursuant to its power to require a complainant to submit to examinations under 19 *Del.C.* § 2343, the Industrial Accident Board must adopt appropriate procedures to give employees a reasonable means to challenge a proposed medical test or procedure as unreasonable or unnecessary.

The decision of the Superior Court, denying the writ of prohibition, is AFFIRMED.