**Joanne T. FORD, Petitioner Below, Appellant,**

v.

**Richard S. FORD, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: July 16, 1991.
Decided: Oct. 17, 1991.

Edmund D. Lyons, Jr., Aerenson, Ferrara & Lyons, Wilmington, for appellant.

Gerald Z. Berkowitz, Berkowitz, Schagrin, Coonin & Cooper, Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY and WALSH, JJ.

WALSH, Justice:

In this case we are asked to decide whether the presumption of applicability of the Delaware Child Support Formula, the so-called Melson Formula, is rebutted by a showing that the Formula dictates an amount of child support far in excess of what is necessary to maintain a "manner of living to which the parties have been accustomed when they were living under the same roof." 13 *Del.C.* § 514(2). We hold that the presumption is rebutted by such a showing and affirm the court below on that issue. However, we conclude the amount of support ultimately set by the Family Court in this case to be unsupported by sufficient reasoning. Accordingly, we vacate that order and remand the case for a new support determination consistent with this opinion.

1. A pseudonym is adopted to protect the confidentiality of the parties pursuant to Del.Supr.Ct.

## I

Appellant, Joanne T. Ford[1] ("Mother"), and appellee, Richard S. Ford ("Father"), are the parents of three children; ages twelve, ten and six. After sixteen years of marriage, the couple separated and eventually obtained a divorce on July 27, 1987. During most of the marriage, Mother had not been employed outside the home. The family was supported solely by Father's income which, in 1987, was approximately $100,000. On April 7, 1988, the parties agreed to a consent order in the Family Court under the terms of which the Father agreed to pay $1,700 per month in child support as an interim measure until "all financial matters are settled."

In March, 1989 the parties executed a written agreement, later entered as an order of the Family Court, which resolved most of their property disputes. Under the agreement, the Mother received approximately $1.3 million in personal property and investments while Father received approximately $3 million. Furthermore, Father agreed to deed the family home to Mother and be responsible for the mortgage payments, to pay all educational expenses of the children through college, to provide medical and health insurance for the children if Mother could not do so through her employment at no expense, and to obtain a $1 million term life insurance policy on his life with the children as beneficiaries. The agreement further provided that the interim support obligation of $1,700 monthly would remain in effect pending an "attempt to reach agreement, and upon their failure to agree, the matter shall be submitted to the Court for determination."

Unfortunately, the parties could not agree on the amount of child support. This was perhaps due to the changed financial circumstances in which they found themselves. As stated above, at the time of the divorce, Mother's income was nominal and Father's was approximately $100,000 per year. By early 1990, however, Mother's

Rule 7(c).

income had grown to over $70,000 per year, as the result of investment income and employment as a school teacher, and Father's to over $210,000 per year.

In the Family Court, the child support issue was submitted to a Master. The Master found, *inter alia*, that the incomes of the parties were approximately as outlined above, that the cost of the health insurance and the insurance on Father's life was directed to the children's benefit, but that the Father had paid nothing towards the children's educational expenses. The Master applied the Melson Formula using the parties' present income data, rejecting Father's argument that the Formula should not be applied in this case, and set Father's child support obligation at $3,842.84 per month as long as he continued paying the premiums of the life insurance for the benefit of the children or $4,281.83 if he discontinued the insurance coverage.[2]

Father sought review *de novo* of the Master's Order, again arguing that the presumptive applicability of the Melson Formula had been rebutted in this case. The Family Court agreed and set Father's child support obligation at $1,700 per month, the amount agreed to in the interim support order. The court appeared persuaded that the children had not suffered a diminution in their standard of living since their parents' separation. As directed by our opinion in *Dalton v. Clanton*, Del.Supr., 559 A.2d 1197, 1211 (1989), the court explained its ruling that the Melson Formula presumption had been rebutted as follows:

> Not only do the children's monthly expenses not justify such a financial obligation as contemplated by the Formula to be placed upon father, but father's contribution of the mortgage payments, the children's health insurance and the funds set aside for their college educations, also support the argument the Melson Formula is not appropriate in this case. While the monthly mortgage payments are no doubt a part of the division of the marital property, in the equities of the situation, it cannot be ignored that

these payments take some financial burden off mother and also help to insure that the children remain in the residence that they once shared with both parents. Father also purchases clothing and other items for the children when they are with him on their regular visitation. He vacations with them and is providing for their future college expenses should the children desire to pursue post-secondary education.

In support of its conclusion that $1,700 was a proper figure, the Family Court noted that:

> [t]he evidence revealed that since the interim sum had been established, the children have not suffered a diminution in the standard of living they enjoyed when their parents were together. Also important is the fact that when additional funds had been requested for specific needs in the past, father had been reasonable in providing those funds.

In this appeal, Mother argues that the Family Court erred in concluding that equitable considerations successfully rebutted the Melson Formula presumption. Mother does not claim that the children have not enjoyed a standard of living equal to the one they experienced when the parties "lived under the same roof." Rather, she contends that the children are entitled to share in the post-separation increase of Father's standard of living, as dictated by the Melson Formula. To the contrary, Father maintains that strict application of the Formula to the specific facts of this case yields an inequitable result thus rebutting the Formula's presumptive applicability.

## II

The Melson Formula was born of judicial effort to provide a uniform implementation of the broad directives of Delaware's Child Support Statute, 13 *Del.C.* § 514. Since its introduction in 1977, it has gained acceptance as a standard support mechanism in the Family Court and its use has been approved by this Court. *Dalton v. Clanton*, 559 A.2d at 1209.

---

2. This obligation was in addition to the mortgage, insurance, and education payments.

■ The formula operates as a rebuttable presumption. Unless a party can show that use of the formula would be inequitable, the court will apply its terms to fix the minimum income requirements of the parents and determine the primary child support needs of the children. The Delaware Child Support Formula: Study and Evaluation, Report to the 132nd General Assembly, Family Court of the State of Delaware, at 4–12 (April 15, 1984) (hereinafter "Report to the General Assembly"). If there is income remaining after these basic needs are met, the court will add a portion of that remainder to the support order, based on the number of minor dependents and their specific needs. The purpose of the third step award is "to ensure that the child enjoys, as nearly as possible, the standard of living to which he or she would have been accustomed were the parties residing under the same roof." Report to the General Assembly at 10. The court may also make an additional award, in a proper case, of supplemental quarterly child support. This provision addresses the situation where a substantial discrepancy exists between the respective incomes of the custodial and non-custodial parents. It is intended "to allow the child to enjoy the standard of living of the more affluent parent." Report to the General Assembly at 12.[3]

■ We believe two aspects of this scheme are relevant to the present case. As we noted in *Dalton*, the fact that the Melson Formula operates as a rebuttable presumption is of particular significance. 559 A.2d at 1211. Its presumptive effect affords flexibility to the Family Court in dealing with situations that are not served well by the formula, while leaving intact, for the most part, the uniformity and predictability of a mathematical equation. Uniformity and predictability are indeed valued qualities in this difficult area of the law. If, however, the mechanical application of a valued formula produces an inequitable result in a particular case, the process must be reexamined. This reexamination may dispel the presumption.

■ Exactly what is fair, of course, is not easily defined, particularly where the inquiry involves the allocation of excess parental income between parent and child. Each case must be judged on its own facts but our review of whether the presumption has been rebutted, *i.e.*, whether to use the Melson Formula as a judicial tool, is a question of law. We therefore consider *de novo* the Family Court's ruling on this issue. *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927 (1982).

■ Under the circumstances here presented, we agree with the Family Court that the presumption had been rebutted. By separate agreement prior to the support hearing, the Father had provided generously for his children. He has deeded the family home to Mother and assumed the mortgage. He has provided for the children's education and health needs and has secured these benefits with a $1 million insurance policy on his own life. While the children are presently attending public school, he has agreed to provide private schooling during the children's minority and to defray their college expenses until age 25. Additionally, Father has paid $1,700 per month in direct support, without fail, since the interim agreement. The Family Court found that these expenditures allowed the children to maintain a standard of living at least equal to the one they enjoyed when their parents lived under the same roof, a finding we conclude is supported by the evidence. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972).

Although it would appear that the children have been well provided for, the Mother claims a greater level of support. She seeks reinstatement of the amount awarded by the Master through application of the Melson Formula—$2,100 per month in addition to what Father is already paying. Mother argues that the children are entitled to this even after all their needs have been satisfied and they are secure in a comfortable lifestyle, simply because the Father's income will permit such an

---

3. For a more precise explanation of these calcu- lations, see *Dalton*, 559 A.2d at 1212 app. I.

award.[4] In our view, however, this case illustrates a basic limitation of the Melson Formula and the inequity which will occur if its use is not rebutted.

■ When the income of an individual is substantial, he or she will use a smaller percentage of that income to maintain a certain standard of living as compared to an individual with less income. This is because, outside of unusually extravagant lifestyles, only a limited sum can be spent on a standard of living. At some point income is directed less and less towards "needs" and more and more towards savings or investments and thus becomes part of an individual's estate. The Delaware Child Support Statute certainly contemplates that children share in their parents' standard of living, even a somewhat luxurious standard of living. See 13 *Del.C.* § 514(2). But it does not direct or authorize the Family Court to distribute a parent's estate. The Family Court has no duty or authority to order payments which go beyond the demands of reasonable and generous support, meaning, in this context, enough to share in the respective lifestyles of the parents.

■ The Melson Formula fails to address this distinction. It considers all income to be within its purview and thus available for support. It assumes that all income is used to satisfy primary needs or maintain a standard of living.[5] But the statutory purpose embraced in 13 *Del.C.* § 514 is child support, not wealth sharing. Thus, where the mechanical application of the Formula requires the inclusion of all income to produce a support result far in excess of lifestyle needs, *i.e.*, a level commensurate with their parents', the presumption of applicability is rebutted. In this case, we find that the Family Court correctly determined the presumption to have been rebutted and affirm the court on that issue.

### III

■ We next address the Family Court's determination that Father be ordered to pay $1,700 per month in child support, the amount fixed by the parties in their interim agreement. The amount of child support ordered by the Family Court is reviewed under an abuse of discretion standard. *Dalton*, 559 A.2d at 1201. We, therefore, will leave the lower court's order in place if we find it to be supported by the record and the product of an orderly and logical deductive process. *Id.*

The Family Court's finding that the children have suffered no diminution in their standard of living since their parents' separation is stated rather succinctly. The court gave little indication of the facts upon which it relied in making that determination or how it arrived at its conclusion. The court appeared to give little, if any, consideration to the significant increase in the Father's income since the interim support figure was determined and what, if any, effect this should produce in the way of an enhanced lifestyle for the children.

■ As we stated in *Dalton*, "to the extent that cases are decided that vary from the Melson Formula and are affirmed on appeal or unchallenged, [the Family Court's recorded reasoning] will provide the basis for assuring uniformity to the parties in similar situations." 559 A.2d at 1211. Thus, the Family Court's discussion of its reasoning will aid future litigants to

---

4. The Melson Formula contemplates child support from both parents. Obviously the noncustodial parent should bear more of the burden but the custodial parent is not relieved of an obligation. Thus, the $2,100 is not only over and above the $1,700 plus mortgage, insurance and education payments made by Father, but also additional to Mother's support, calculated in this case by the Master to be $1,426 per month. Essentially, Mother's argument is that the children are entitled to over $5,000 per month of support *after* their dwelling, insur-

ance, transportation and educational needs are fulfilled.

5. We do not mean to imply that the less affluent members of society who are subject to a child support order may not accumulate an estate. The Melson Formula itself is designed to assure that a support obligor is not strangled by financial obligations. *See, e.g. Dalton*, 559 A.2d at 1215, app. I, Part II, Step B. This built-in flexibility, however, will only stretch so far and is insufficient in cases like the present one.

predict what their obligations will be if the Melson Formula is inapplicable. In this way, the qualities of uniformity and predictability will be preserved, at least to some degree, in cases where the presumption of applicability has been rebutted. Therefore, for a child support order which is not the product of the Melson Formula to be supportable, the record must not only contain facts upon which the lower court could have reasonably relied, but the reasoning of the court must be evident. *Kenton v. Kenton*, Del.Supr., 571 A.2d 778, 784 n. 8 (1990).

■ Here the Family Court simply adopted the figure set by the parties as an interim amount. Yet, at the time this amount was agreed to, the parties obviously had not considered it with as much attention as they would have had they been aware that it was to become a more permanent figure. Indeed, as the property division agreement recites, the amount of child support was a matter of continuing disagreement between the parents, with the expectation that a judicial determination would be required. Furthermore, we are unable to determine whether the Family Court has abused its discretion if it is unclear whether the court considered all the facts of record upon which discretion should have been exercised. Under these circumstances, we cannot say that the Family Court's conclusion is supported by the record.

■ It is evident from the lower court's order that it was satisfied that $1,700 per month of child support allowed the children to maintain a standard of living not less than that "they enjoyed when their parents were together." Yet the court mentioned nothing about providing the children a higher standard even though the income of both parents had increased substantially since the separation. In Delaware, a divorce does not freeze the children's lifestyle at the pre-divorce level. Nor does it make the custodial parent solely responsible for any increase in their standard of living. See Report to the General Assembly at 12. The children are entitled to share in the enhanced lifestyle of

*both* parents. It is clear from the Family Court's opinion in this case that once it was satisfied that the children had suffered no diminution in their standard of living since the divorce, the court believed it need go no further. We believe that this conclusion was not the product of an orderly and logical deductive process.

### IV

We recognize that where the application of the Melson Formula is rebutted in large income cases, the Family Court's task is a difficult one. On the one hand, the court is not authorized to distribute excess wealth in a parent's estate to the children. On the other, the children are entitled to share in the more affluent lifestyle of the non-custodial parent.

We believe the proper approach to this problem is the very reverse of the one taken by the Melson Formula. The formula contemplates situations where there may not be enough income to support two households in the same manner the parties had previously enjoyed. Thus, the formula first calls for a determination of total net income. Only then does it consider the needs of the parties and subtract the cost of those needs from available income. *See generally* Report to the General Assembly at 4–10.

The Melson Formula's standard of living adjustment, or SOLA, is intended to provide an incremental account of support based on the higher standard of living of the more affluent noncustodial parent. *Shuba v. Division of Child Support Enforcement*, Del.Supr., 564 A.2d 1084 (1989). The inapplicability of the Melson Formula in this case is evident if one focuses on the SOLA adjustment. In *Turner v. Turner*, Del.Supr., 586 A.2d 1182, 1189 (1991), this Court criticized the Family Court's adherence to accepted tax accounting principles in applying accelerated depreciation to produce a mathematical result at clear variance with the reality of the income of the noncustodial parent. Here, application of a standard of living adjustment without regard to the father's unusually large income or his other significant contributions to the

children's standard of living produces a similar distortion.

 Where, as here, the incomes of the parents are so substantial as to produce a result through application of the Melson Formula which rebuts the Formula's applicability, the court should begin by determining the enhanced needs of the children. By this we mean more than just mere essentials. The court should determine what amount is necessary for the children to share in the heightened standard of living of their more affluent parent.[6] It should then determine what amount of child support would be required in light of those enhanced needs and order that amount paid. In allocating that amount between the parents, the court should consider the relative earning abilities of the parents to participate in that level of support and to allocate their respective payments accordingly. We stress, once again, that every order for child support, however derived, must be equitable. It must be fair to all parties. *Dalton*, 559 A.2d at 1212.

The judgment of the Family Court is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings consistent with this opinion.

---

**6.** This does not mean that the Family Court must sanction waste or require the purchase of luxuries simply because the parents' income permits. The Court must apply a standard of reasonableness.