**DCSE/Beverly VANN, Petitioners,**

v.

**Steven RIVERS, Respondent.**

No. CK92–03439.

Family Court of Delaware,
Kent County.

Submitted: Aug. 4, 1997.
Decided: Oct. 15, 1997.

---

**38.** Plaintiff's motion for new trial, ¶ 4.

John A. Eberly, Deputy Attorney General, for Petitioners.

Steven Rivers, Respondent, Pro Se.

NICHOLAS, Judge.

Before the Court is a Request for Review *de Novo* of a Master's order dated November 4, 1996, filed by the Respondent, Steven Rivers. Also before the Court is Mr. Rivers' Petition for Accounting of Child Support. Mr. Rivers contends that the Court should deviate from the Delaware Child Support Formula guide-

lines, the Melson Formula, in calculating his child support obligation because due to the combined workings of the child support guidelines and the welfare reimbursement rules, he is being required to reimburse the State for the support of children who are not his own. Petitioners, Beverly Vann and the Division of Child Support Enforcement, hereinafter DCSE, oppose any deviation from the presumptive application of the Melson Formula.

The parties are the natural parents of a minor daughter, Danielle Rivers, born March 27, 1982. Mr. Rivers and Ms. Vann never married. Danielle presently resides with her mother. Also residing with Ms. Vann are her three other children, fathered by different men, and a grandchild. Ms. Vann is unemployed and has a monthly income of $990 consisting of $475 in Aid to Families with Dependent Children (AFDC) payments, $465 in food stamps and the first $50 of Mr. Rivers' child support payments. Only four of the five children living in the household, including Danielle, are included in the AFDC grant, the fifth child being denied benefits because he is not attending school.

Mr. Rivers is employed with a monthly gross income of $3,605. After a hearing on the Petitioner's child support petition and applying the Melson Formula, the Master determined Mr. Rivers' support obligation to be $436 monthly. Of this amount, $212 was determined to be the amount attributable to the Standard of Living Allowance portion of the Formula. In applying the Melson Formula, the Master attributed Ms. Vann with income of $5 per hour for a forty-hour week, despite her current unemployment. After entry of the

support order and subsequent wage attachment, Mr. Rivers took this Review *de Novo* of the Master's order. Simultaneously he filed a Petition for Accounting. Mr. Rivers contends that because his support obligation exceeds the *pro rata* share of the AFDC benefits apportioned to his daughter, the required reimbursement of his support obligation to the State essentially forces him to pay for the support of children who are not his own and therefore justifies deviating from the presumptive use of the Melson Formula.

Ms. Vann receives public assistance as part of the Aid to Families with Dependent Children (AFDC) program. This program, as part of the federal Social Security Act, enables the states to provide public assistance to needy families and their children in accordance with federally enacted laws and regulations. In order to receive AFDC benefits, Ms. Vann is required to assign over to the State all child support payments owed to her. 31 *Del. C.* § 504(a).[1] The first $50 of Mr. Rivers' support obligation is dispersed directly to Ms. Vann and the remainder paid to the State as reimbursement for the AFDC benefits she receives. Pursuant to the Division of Social Services Rules 3015 and 4001, in determining a family's eligibility to receive AFDC benefits, all parents and their eligible children residing together and the respective incomes are included together as a family budget unit in establishing whether the entire family unit's income exceeds the AFDC Standard of Need as set by the Department of Health and Social Services pursuant to 31 *Del. C.* § 503(d).[2]

---

1. At the time this case commenced, this requirement was also mandated by the Social Security Act, codified at then 42 *U.S.C.* § 602(a)(26)(A). However, on August 26, 1996, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, P.L. 104–193, was enacted, substantially amending the Social Security Act and eliminating the specific requirements that had to be included in state welfare plans in order to provide greater flexibility to states in operating their

own welfare programs. These amendments to the Social Security Act only became effective July 1, 1997.

2. This requirement of a mandatory "family filing unit" was also originally required by federal law at then 42 *U.S.C.* § 602(a)(38). The creation of the mandatory family unit or "sibling deeming rule" as it is often called, was added to the Social Security Act by the Deficit Reduction Act of 1984 in order to end the practice of excluding certain family mem-

As part of the Child Support Enforcement Amendments of 1984, federal law requires all states to establish child support guidelines with a rebuttable presumption of correctness in determining child support awards. 42 *U.S.C.* § 667. Although the statute requires a "written or specific finding on the record" when deviating from the guidelines, it is clear from the legislative history of the statute that the "guidelines need not be binding on judges and others who determine award amounts." S.Rep. No. 377, 100th Cong., at 17 (1988), 1988 U.S.Code Cong. & Admin.News at pp. 2776, 2794. Therefore, although the federal law requires a uniform approach to establishing child support awards, the actual determination of the amount of the obligation remains in the hands of state judicial officers.

The amount of a child support obligation in Delaware is determined pursuant to 13 *Del. C.* § 514. In compliance with federal and state law, Delaware established the presumptive use of the firmly-established and widely-used Melson Formula in calculating a support obligation, the use of which was upheld by the Delaware Supreme Court in *Dalton v. Clanton,* Del. Supr., 559 A.2d 1197 (1989). In *Dalton* the Court concluded that the presumptive use of the Melson Formula is "consistent with the letter and spirit of 13 *Del. C.* §§ 504, 514 and 10 *Del. C.* § 907(5)." The Court held that the use of the Melson Formula "provides for a uniform approach to child support decisions, unless the Family Court is persuaded that an application of the Melson Formula would be inequitable." *Id.* at 1211. In this case, despite the fact that Mr. Rivers' daughter is not directly receiving the $436 awarded for her support, I cannot conclude that Mr. Rivers has successfully rebutted the presumptive application of the formula.

 There are three parts to the Melson Formula calculation. Step One determines the available income of each parent. Step Two determines the child's primary support needs and Step Three determines the Standard of Living Allowance (SOLA). The purpose of the SOLA portion of the Melson Formula is to "ensure that a child enjoys, as nearly as possible, the standard of living to which he or she would be accustomed if the parties resided together under the same roof." *The Delaware Child Support Formula: Study and Evaluation, Report to the 132nd General Assembly*, Family Court of the State of Delaware, at 10 (April 15, 1984). *See also, Ford v. Ford,* Del.Supr., 600 A.2d 25 (1991). The SOLA portion "is intended to allow the child to enjoy the standard of living of the more affluent parent." *Ford* at 29. In the case *sub judice,* however, Mr. Rivers' child is unable to benefit from his higher standard of living because due to the application of the State's welfare laws and policies, the child is not directly receiving the child support ordered for her benefit. Instead, by operation of law, all rights to the child support have been automatically assigned over to the State. At first glance, this would appear to justify at least deviating from the Formula by eliminating the SOLA in setting Mr. Rivers' support obligation, especially in light of the fact that Danielle's *pro rata* share of the AFDC benefits are considerably lower than the support Mr. Rivers pays for her benefit. However, for the reasons stated below, I decline to deviate from the Melson Formula in this case.

If Danielle and Ms. Vann were residing alone, without the other children in the household, Mr. Rivers would be paying the same $436 as determined by the Melson Formula and the State would be entitled to a reimbursement for the same. According to the Division of Social Services determination of financial need in AFDC cases, pursuant to Rule 4000, if Ms. Vann and Danielle were residing alone, they would

---

bers with income from the assistance unit in order to maximize benefits for the family. This federal requirement was also recently eliminated by the Personal Responsibility and Work Opportunity Act of 1996, effective July 1, 1997.

still qualify for AFDC assistance, having a combined monthly income of only $386 [3], over $100 short of meeting the threshold requirement that would disqualify a family of two from AFDC benefits.[4] Thus, Mr. Rivers cannot contend that the *amount* of the support obligation generated by use of the Melson Formula is inequitable, since that sum would be identical whether Danielle lived alone with her mother or with other AFDC beneficiaries in the household. Nevertheless, he does contend that because he is entitled to an accounting of child support and can demonstrate that the support paid is not being used for Danielle's benefit, the result is inequitable.

 13 *Del. C.* § 518 provides in pertinent part, "[a] person who receives funds from another person for the support of a child in his or her care is a fiduciary with respect to such funds and may be ordered by the Court to account for the expenditure and management of such funds on application by any payer of such funds for good cause shown." From the clear implication of this statute that money paid for the support of a child must be used for that purpose, Mr. Rivers argues that it is unlawful for his support payments to be used to reimburse the State for AFDC payments to Ms. Vann, particularly because there are other AFDC beneficiaries in her household who are not his children. It is true that Mr. Rivers owes no duty of support to any of the other children residing in the household apart from his daughter. 13 *Del. C.* §§ 501 and 502. However, the language of the State's welfare assignment provision, § 504 of Title 31, appears to preempt Mr. Rivers' right to an accounting under the circumstances. 31 *Del. C.* § 504(a) provides that *"any law of the State to the contrary notwithstanding,* the application of and/or receipt of public assistance ... shall act as an automatic and immediate assignment of all rights of support for the applicant ... *and any dependent child."* (emphasis added). Thus, where the right to an accounting comes into conflict with the welfare law, the latter must prevail. While under the circumstances this may appear unfair on its face, such is a matter of public policy as determined by the General Assembly in prioritizing the policies of this State and beyond my authority to change. Therefore, Mr. Rivers' best alternative to ensure the funds expended are used exclusively for Danielle's benefit is to have her live with him.[5]

Furthermore, deviating from the Melson Formula under these circumstances would be manifestly contrary to public policy for two reasons. First, deviating from the Formula would have the effect of treating obligors who have children on AFDC differently from those whose children are not on public assistance. For example, if Obligor A, whose children were receiving AFDC benefits, and Obligor B, whose children were not, had similar monthly incomes, allowing a deviation from the Melson Formula in Obligor A's situation would create a substantially lower obligation than Obligor B, merely because A's children, by virtue of the welfare assignment scheme, would not be directly receiving the support and directly benefiting from Obligor A's higher standard of living. This lower obligation amount, however, would have the effect of encouraging obligors to allow their children to remain on public assistance in order to personally benefit from a

3. The $436 of Danielle's child support minus the first $50 of that support.

4. Pursuant to Division of Social Services Rule 4000, Determination of Financial Need, a family of two is eligible to receive AFDC cash assistance if the family unit's gross income in any given month is less than $499 (185% of the Standard of Need of $270 for a family of two).

5. Interestingly enough, Mr. Rivers has been awarded primary placement of Danielle pursuant to a November 8, 1996 Consent Order, although he claims he is unable to exercise this custody for fear the child will follow through with threats to run away if removed from her mother's home.

lower support obligation. This would be contrary to the public policy enunciated by the General Assembly of encouraging public assistance to be transitional, as opposed to a way of life, and of requiring both parents to be held responsible for the support of their children. 31 *Del. C.* § 501.

Secondly, deviating from the Formula in this case by eliminating the SOLA would lower the child support obligation, thereby lowering the net income to the family unit, keeping the family below the AFDC Standard of Need and forcing the family on continued public assistance. Again, this would encourage obligors to continue to allow their children to remain on AFDC in order to personally benefit from a lower support obligation.

Therefore, although Danielle does not directly receive the full use and amount of the SOLA, and cannot, while she is on AFDC, benefit from the standard of living that Mr. Rivers enjoys, the SOLA portion of the child support obligation does in fact play a part in raising her standard of living given the overall resources of her family unit.

█ Finally, Mr. Rivers contends that the statutory scheme requiring State reimbursement taken together with the Division of Social Services Rules establishing the family filing unit as the means to determine AFDC eligibility violates the Due Process and Takings Clauses of the Fifth Amendment to the United States Constitution. In sum, Mr. Rivers claims that either he is being forced to support children who are not his own or that the benefits scheme is an unconstitutional taking of Danielle's property. While this contention has, at first blush, some intuitive appeal, the issue has already been decided to the contrary by the United States Supreme Court. The "family filing unit" utilized by the Division of Social Services Rules to determine AFDC eligibility is identical to the scheme mandated by Congress through passage of the Deficit Reduction Act of 1984. In *Bowen, Secretary of Health and Human Services v. Gilliard et al,* 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987), the Supreme Court considered whether the Deficit Reduction Act of 1984 requiring families to include in the filing unit all children living in the same home constituted a violation of either the Due Process or Takings Clause of the Fifth Amendment. It rejected both claims. As to the Due Process claim, the Court determined that it is permissible to include all members of the family in a filing unit and that through the assignment provision, the government steps into the shoes of the support obligor in making sure that child support obligations are met. As to the Takings Clause claim, the court reasoned as follows. First, the court concluded that Congress determined that support payments are generally beneficial to the family unit and not merely for the benefit of the child whose existence generates the payment. That is to say, "the requirement that support income be used for the 'benefit' of the child does not preclude its use for common expenses." *Id.* at 600, 107 S.Ct. 3008. The Court then concluded that the inclusion of support income in the benefit calculation does not have any effect on the child's right to have that payment used for her benefit. Therefore, Danielle has no claim that her Fifth Amendment rights have been violated. Any such claim that Mr. Rivers might have must surely be derivative from Danielle's rights since it is he who owes her an obligation of support. Consequently, as she has no claim, nor does he.

**IT IS THE ORDER OF THE COURT** that for the reasons stated above, Mr. Rivers' current support obligation remains at $236.17 semi-monthly, together with $7.58 toward arrears, for a total payment of $243.75 semi-monthly, and that his Petition for Accounting is **DISMISSED.**

**IT IS SO ORDERED.**